LAFLIN *v.* CHICAGO, W. & N. R. Co.

*(Circuit Court, E. D. Wisconsin.  December 10, 1887.)*

1. EMINENT DOMAIN—COMPENSATION—DAMAGE TO PART NOT TAKEN—ADAPTABILITY FOR FUTURE USE.
    In an action for damages to land, caused by the construction of a railroad, the plaintiff is entitled to recover the then fair market value of the part taken, and the amount of the damage to the residue by such taking, to be estimated by considering the value of the land for the purposes for which it was used when taken, or its reasonable adaptability to particular uses, having reference to the existing wants or business of the community, or such as might then have been reasonably expected in the near future.

2. SAME—COMPENSATION—HOTEL PROPERTY—DRIVES—ANNOYANCE.
    In an action for damages by the construction of a railroad across a tract of land, the plaintiff cannot recover for injury to drives about the premises, the annoyance or danger of fire from passing trains, loss of patronage to a hotel on such land, the cost of a retaining wall along the track, or for improper or negligent construction of the road.

3. SAME—COMPENSATION—HOTEL PROPERTY—DIMINUTION OF BUSINESS.
    In an action for damages resulting from the construction of a railroad across plaintiff's hotel property, evidence that the construction of the road will diminish the business of the hotel is admissible only to aid the jury in determining the weight of direct testimony of depreciated value.

4. SAME—RAILROAD—COMPENSATION—BENEFIT CONFERRED AS ABATEMENT.
    In an action for damages to land in Wisconsin, resulting from the construction of a railroad, the fact that the road is a trunk line to Chicago is not such a benefit to plaintiff as will be considered in abatement of the damages suffered by him.

5. EVIDENCE—EXPERT TESTIMONY—PROVINCE OF JURY.

In determining the weight to be given to the opinions of experts concerning values and damages, the jury may apply their own general knowledge and ideas to the matters of fact in evidence.

6. SAME.

In determining questions of value and damage, it is proper for the jury to consider the evidence of actual sales of other lands at or about the time of the taking by the railroad company of the plaintiff's land, provided such lands were of the same general character, similar in situation, and located in the immediate vicinity of those of the plaintiff.

7. SAME—VALUE OF LAND—VIEW BY JURY.

The knowledge which a jury has acquired by a view of the premises may be used by them in determining the weight of conflicting testimony respecting value and damage, but no further.

At Law. Action for damages to land by the construction of a railroad.

*D. H. Sumner* and *J. V. Quarles*, for plaintiff.

*J. G. Flanders, Hugh Ryan, D. S. Wegg,* and *Howard Morris,* for defendant.

DYER, J., (*charging jury.*) This is a proceeding, removed from the state court, for the ascertainment of the damages alleged to have been sustained by the plaintiff by reason of the construction of the defendant's railroad across a certain tract of land owned by the plaintiff, situated in the county of Waukesha. The premises in question consist of 80 acres of land, upon which are located the summer hotel known as the "Fountain House," its adjuncts and appurtenances. They are bounded on the north by College avenue, on the east by Grand avenue, on the south by what have been spoken of as the "Agricultural Society Grounds," and on the west by West avenue; and in part are within the corporate limits of the village of Waukesha. The railroad, as the maps in evidence show, enters the plaintiff's lands from the north at College avenue, which it crosses, and passes over what has been described in the testimony as the "14-acre tract," in a curvilinear course, until it touches the line of West avenue, and runs thence along the east line of that avenue to the south limits of the plaintiff's premises. The plaintiff claims that, in estimating values and damages, the property should be separated into three parcels, consisting of one tract of 14 acres, another of 26 acres, and another of 40 acres; and some of the witnesses make their estimates upon the basis of such a division. There is no dispute about the quantity of land actually taken for railroad purposes,—that it is 6.42 acres.

Two questions are presented for your consideration: *First.* What was the market value of the strip of land, 100 feet wide, actually taken for right of way, at the time it was taken? *Second,* to what extent, if at all, were the remaining lands of the plaintiff depreciated in their market value, by the construction of the road over the strip taken? The time at which values are to be ascertained and damages determined, is the date of the award made by the commissioners in the condemnation proceedings, which was the twenty-second day of September, 1885. You

must keep that in mind as the time when the liability of the railroad company was incurred; and the extent of its liability depends upon what you find to have been the value of the land actually appropriated at that time, and the resulting damages to the adjacent premises.

The railroad company had the lawful right to build its road across the plaintiff's land; it being a condition to the exercise of that right that it should make to the plaintiff just compensation therefor. Just compensation consists in making the owner good, by an equivalent in money, for the loss he actually sustains in the value of his property by being deprived of a portion of it. It includes, not only the value of the land taken, but also the diminution of the value of that from which it is severed. *Bigelow* v. *Railway Co.*, 27 Wis. 487.

From the nature of the case, the testimony has covered a wide field of inquiry, although the principal issue is confined within quite narrow limits. The parties are far apart in their claims as to what is the true measure and extent of the plaintiff's loss and alleged injury, and many of the witnesses differ widely in their opinions and estimates. On the side of the plaintiff, witnesses have placed the value of the strip of land taken by the railroad company on the twenty-second day of September, 1885, at sums varying from $10,860 to $11,100, and have estimated resulting damage to the remainder of the 14 acres at from $4,500 to $7,200, and to the remainder of the 40-acre tract at from $1,300 to $2,000. On the side of the defendant, witnesses have placed the value of the strip of land actually appropriated by the railroad company, at sums varying from about $3,000 to $6,800, and have estimated resulting damage to the remainder of the entire property at from $1,700 to about $6,000. I believe this fairly states the extreme limits between which the testimony ranges on this subject; some of the witnesses, as must have been observed by you, striking a medium between the extremes. Then there are witnesses for the plaintiff who estimate further damages, in the form of alleged injury to the hotel property proper. As, for instance, one witness gives it as his opinion that the hotel property was damaged by the taking of the strip for the construction of the road to the extent of $20,000. Another witness says he thinks the hotel property was of the value of $245,000 on the twenty-second day of September, 1885, and that it was diminished in value by the construction of the road across the plaintiff's land, 8 per cent. Some of the defendant's witnesses, as you will remember, include, in their general estimate of damage, such depreciation in value as they think the hotel property, or some part of it, suffered; and others are of the opinion that that property was not injured or depreciated in value by the construction of the road over the plaintiff's premises, and so they do not include any such depreciation in their estimates of damage. Some of the witnesses have estimated values and damage upon the basis of certain divisions of the property which they have stated to you. Some have based their estimates upon their views of the availability of the lands for platting in the form of village lots, and have determined values according to the theory of division into lots. Others have based their estimates upon the view that the land

should be considered in part as acre property, and in part as adapted to use in the form of platted property. In short, as the views of the witnesses have differed with reference to the character, situation, and adaptability to various uses of the lands in question, their estimates of value and damage have differed.

Keeping steadily and clearly in mind the fact that you are to determine—*First*, what was the fair market value on the twenty-second day of September, 1885, of the strip of land taken from the plaintiff by the railroad company for railroad purposes; and, *second*, how much were the lands from which the strip was severed, depreciated in their market value at the time named, by the appropriation of the strip,—you must, in the first place, as you take up these questions, consider the situation just as it was on the twenty-second day of September, 1885. On that day the railroad company comes there and takes this strip of land for its right of way. It intends to build a railroad. Now, look at the character, the situation, the surroundings, the condition of this property, consisting of 80 acres, at that time. To what uses was it then being put? To what uses, just as it then stood, was the land, or any part or parts of it, reasonably adapted or available in the immediate future? What was the intention of the plaintiff at that time with reference to the use of the land? How was the railroad located with reference to its course over the land? How was the remainder of the land left or affected, immediately after taking out the strip for right of way, with reference to situation, actual use, and availability for any reasonable use in the immediate future? Thus looking at the whole situation as it was at the time, what was the fair market value of the strip taken on that day; and, if the remaining land was depreciated in its market value by the taking of the strip for railroad purposes, how much was it depreciated? Such is the rule to be applied; and by market value, I mean what the property would have sold for in cash, or on such time and terms as would have been equivalent to cash, to a person desiring to buy.

The plaintiff claims that the hotel property and its appurtenances consisted of 26 acres of land, which, as described, extended to the railroad on the west; and he further claims that this 26 acres, with the improvements, should be considered distinct from the balance of the land. Then he claims that the 14 acres spoken of, and the 40-acre tract, should be considered separately from the hotel property, and should be valued with reference to injury thereto, on the basis of their availability for certain uses, distinct from the hotel property. As I have said, some of the witnesses make their estimates of value and damage with reference to such a division. Other witnesses make their estimates in accordance with other forms of separation of the property, which they deem most correct for the purpose of arriving at values and damages. Neither the plaintiff nor any of the witnesses can make any arbitrary divisions of the property for the purpose of laying the basis for the allowance of damages, or for estimates of damage, which are conclusive upon you. They had the right to put before you their views of how the property should be considered, either as an entirety or in separate parcels, in giving their

opinions of value and damage, but you are not bound by their conclusions in that respect.

The court cannot instruct you that you must consider the entire 80-acre tract as a whole, or as divided into any particular parcels, in determining the question of damages.    Having heard all the testimony, and understanding the situation of the property as it was on the twenty-second day of September, 1885, the uses to which it was put, and its adaptability to any uses in the immediate future, you will say whether it should be considered as one entire tract, in arriving at values and damages, or whether, in view of any adaptability of different parcels to different uses, it should be considered in such parcels.    If you find from the evidence, for example, that the 40-acre tract was used for agricultural purposes, and was most available for such use in the immediate future, and if you are convinced that it should be considered as a parcel of land distinct from the rest of the property, because of such use or adaptability to such use, then you are at liberty to so consider it, and to treat it, in estimating value and damage, as agricultural lands.    Or, if you should find that at the time named it was more reasonably adapted to some other use in the immediate future, and that therefore it should be considered separately from the rest of the property, you are at liberty to so consider it, and determine the question of damage, so far as it is concerned, with reference to such use.    So, too, if you should find that any of the land between the 40 acres and College avenue, not included in what you may find to be the hotel property proper, was on the twenty-second day of September, 1885, reasonably adapted to any particular use in the immediate future, and that in view of that fact it should be considered separately from the remainder of the property, you are at liberty to so consider it, and to arrive at your conclusions with reference to value and damage, so far as such land is concerned, on the basis of such adaptability to immediate future use.    On this subject the court will only add that, in ascertaining damages, no division of the property should be made regardless of the uses to which the land was put, or of its reasonable adaptability to particular uses, on the twenty-second day of September, 1885, for the mere purpose of enhancing the damages to be paid by the defendant. Such a separation of the property, for such a purpose alone, would be wholly arbitrary, and therefore unjust.

The plaintiff claims that on the twenty-second day of September, 1885, portions of this land were of such a character, and were so situated, that they could be platted into village lots, and be made available for sale and use in that form for residence purposes, and therefore that on this question of value and damage they should be considered with reference to such alleged availability.    As I have already said, the inquiry must be, what was the property worth in the market, viewed not merely with reference to the uses to which it was applied on the twenty-second day of September, 1885, but with reference to any uses to which it was plainly adapted?    Compensation to the owner is to be estimated by reference to the uses for which the property was at that time suitable, having regard to the then existing business or wants of the community where the land

is situated, or such as might have been then reasonably expected in the immediate future. *Boom Co.* v. *Patterson*, 98 U. S. 408. No part of the land in question was platted into lots on the twenty-second day of September, 1885, and you are not to consider it, and must not consider it, as then so platted. The question is not, what would lots sell for in the distant future if the land was platted or divided into lots, streets opened, and lots offered for sale. Nor is the price per lot a measure of value, either in the near or in the distant future, because you cannot award damages for any supposed profits that might be made in the future by a division of the land into lots. That would be too remote and uncertain, —too speculative. The true inquiry is, what were the pieces of land actually taken and the adjacent lands, worth, in the market on the twenty-second day of September, 1885, with reference to their availability for any purpose to which they might be reasonably put by a provident, discreet business man in the immediate future? The plaintiff claims that portions of the land were available for platting into lots, and for sale as such lots in the immediate future; and so the court has permitted him to show in what manner and form, and to what extent, in the opinion of witnesses, the land was so available,—not as giving him the right to recover depreciated value of the property as if it were then in fact platted into lots, nor on the basis of a price or value per lot; but as showing, simply, that it was adapted to use as platted property. And if the evidence satisfies you that any part of the land was valuable for use in the immediate future as village lots, and was depreciated in value for such use by the taking of the strip, then you may consider that fact in estimating the extent of the depreciation.

As the supreme court in this state has said in one of the cases that has been cited by counsel, the jury is to assess the market value of the land taken for the use of the railroad company, and the damages to the other adjacent lands of the owner resulting from such taking. To do this intelligently, it becomes necessary to determine the location, quality, and condition of the land; the uses to which it was at the time of the taking, or might be in the immediate future, applied; its market value, the manner in which the taking of a part of the tract would affect the residue; and any other conditions affecting such value and damages. *Washburn* v. *Railroad Co.*, 59 Wis. 369, 18 N. W. Rep. 328. And as that court further says in the same case, if the value of the land taken, at the time it was taken, was enhanced by reason of its adaptability to some use to which it might be put in the immediate future,—as use for agricultural purposes, or use for platting into lots, or any other use or purpose,—and if its then present value was thereby increased, such value may be adopted as the basis for the assessment. The same rule applies in ascertaining the damages to adjacent lands affected by the taking of a part for railroad purposes. A mere intention on the part of the plaintiff, at some indefinite future time, to subdivide some part of the land from which the 100-foot strip was taken into lots, and to sell them if possible, from time to time, as best he could, at a profit, is not controlling, and, standing alone, is immaterial. It is the actual use of the prop-

erty, its adaptability to any advantageous use, the intention of the plaintiff in connection with such use, and all the surrounding circumstances, at the time a part of the land was actually taken, that must be considered. No change of use or intention on the part of the plaintiff, if any has occurred since the taking of the strip by the defendant, and no change in the adaptability of the plaintiff's land since that time, can alter or enhance the plaintiff's damages.

I have stated that, as to the adjoining lands claimed to have been injuriously affected by the taking of the 100-foot strip for railroad purposes, the measure of damages is its actual depreciation in value at the time of the taking. This depreciation is to be determined exclusive of all remote, fanciful, or speculative injuries. What I mean by that is this: Witnesses have testified to what, in their opinion, was the extent of such depreciation, and, as some of the reasons for this opinion, they have said that the drives around and about the premises are impaired; that inconveniences and dangers are created in crossing the railroad track; that the proximity of the road will cause annoyances in the way of smoke from the engines, noise of the engine whistles and passing cars, and increased exposure to fire. Other witnesses, examined as experts, have testified that because of these alleged inconveniences, dangers, and annoyances, or some of them, the business and patronage of the Fountain House will in their opinion be diminished, and that their effect upon the use of the property for summer hotel purposes will be detrimental. Now, you must clearly and distinctly understand that none of this testimony was admitted for the purpose of laying the basis for the recovery of damages for such remote and speculative injuries, and cannot be properly considered by you for any such purpose. It was only admitted for the purpose of aiding you in determining the weight to be given to the direct testimony of depreciated value. Its function is to strengthen the testimony of the witnesses who say that the property is depreciated in market value by the taking of the strip for right of way and the construction of the road. The object of this testimony is, in short, to account for the alleged decrease in the value of the property as given in the opinions of the witnesses. You must see that there is a wide distinction between giving damages for such consequential and contingent sources of injury, and compensating the plaintiff for any actual depreciation of his property, because of the inconveniences, dangers, and annoyances mentioned.

You will therefore bear clearly in mind that you are not to allow the plaintiff, as damages, any loss of profits in the business of the hotel, or loss of business or patronage, either presently or prospectively; nor are you to allow him damages on account of inconvenience or danger in the use of the drives on or around the premises, or on account of annoyances arising from smoke from the engines or noise of the engine whistles, or increased exposure to fire, or on account of any inconveniences in the use of the hotel property. The true question is, how much was the saleable value of the lands of the plaintiff, and the improvements thereon, from which the strip for right of way was severed, diminished by the taking of that strip for railroad purposes? While, therefore, it is your duty,

in computing the damages in this case, to exclude the items before mentioned, and any others of a similar nature from your consideration, as independent items of damage, you will at the same time understand that you have the right, and that it is entirely proper to consider this testimony of alleged inconveniences, annoyances, and dangers, and any probable effects upon the business of the hotel, as accounting in some measure for the valuations stated by the witnesses; also to enable you to estimate the value of the opinions of witnesses as to the alleged depreciation in the value of the property; and, determining from the testimony how much, if at all, the property is diminished in value by exposure to those remote injuries, in that manner to aid you in measuring the actual or real loss, if any, to the plaintiff by the severance from his lands of the strip taken for right of way, and its appropriation for railroad purposes. *Watson* v. *Railway Co.*, 57 Wis. 353, 15 N. W. Rep. 468.

.From what has been said, it must be plain to you that care is needful in discriminating between the allowance of the items named, or any of them, as damages against the defendant, which the jury cannot do, and the consideration of those items as bearing, in the manner and within the limits stated, upon the estimates of depreciated value made by the witnesses. And here I instruct you that if you find that some or any of the witnesses, in giving their opinions of depreciated value of the property not taken for railroad purposes, have added to the actual depreciated value any amounts as damages for loss of business, annoyance from smoke or noise, inconvenience in the use of the drives, hazards of fire, or any other items which the law does not allow, you will reject such items of damage as not recoverable against the defendant, here. Necessarily, in a case of this character, much of the testimony consists in the expression of opinions touching the subject-matter involved. It is your province to weigh the testimony of witnesses whose opinions have been given upon the subjects of value and damages, by reference to the whole situation of the property and its surroundings, and all the attendant circumstances, and by applying to it your own experience and general knowledge. The evidence of experts as to values and damages does not differ in principle from the evidence of experts upon other subjects. So far from laying aside their own general knowledge and ideas, the jury may apply that knowledge and those ideas to the matters of fact in evidence, in determining the weight to be given to the opinions expressed. While the jury cannot act in any case upon particular facts material to its disposition resting in their private knowledge, but should be governed by the evidence adduced, they may and should judge of the weight and force of that evidence by their own general knowledge of the subject of inquiry; and while great weight should always be given to the opinions, honestly and candidly expressed, of those familiar with the subject, they are not to be blindly received, but are to be intelligently examined by the jury in the light of their own general knowledge, giving them force and control only to the extent that they are found to be reasonable. *Head* v. *Hargrave*, 105 U. S. 49. In short, the rule on this subject is

that a jury is not bound to give weight to testimony which is contrary to what every person of ordinary intelligence knows to be true. But while a jury may resort, in a case like this, where the testimony of value and damages is conflicting, to their own general knowledge of the elements which affect the assessment, in order to determine the relative weight of conflicting testimony, their determination must be supported by the testimony. You must not understand that a verdict should be rendered, or can properly be rendered, on any individual knowledge of jurors of disputed facts material to the case, or upon their private opinions, regardless of the testimony; for that would be most dangerous and unjust.

In determining the questions of value and damage, it is proper to consider the evidence of actual sales of other lands at or about the time of the taking by the defendant of the plaintiff's land, provided such lands were of the same general character, similar in situation, and located in the immediate vicinity of those of the plaintiff. Evidence of such sales, as bearing upon the question of market value, is often of great weight in determining the value of real estate where such value is in issue.

As I have before observed, witnesses who have kept summer hotels in different localities from that of the plaintiff have been permitted to testify before you as to what effect, in their opinion, the building and operation of the defendant's road would have upon the hotel business of the plaintiff. The object of this testimony, and the only purpose it can serve in the case, I have fully explained to you. Of course this testimony is mere expression of opinion, and must be weighed and considered as such. It is conjectural and speculative, and just such weight should be attached to it as it is reasonably and fairly entitled to, in the judgment of the jury. It is claimed by the defendant that it is the experience of other summer hotel keepers who have been called as witnesses that other summer hotels, accommodating a class of guests similar to those accommodated at the plaintiff's hotel, and located a much nearer distance to an operated railroad, have from year to year, while such railroad has been operated near them, carried on a successful business. In reply, it is insisted by the plaintiff that his hotel is situated differently from those referred to by the defendant's witnesses, and that the differences in situation and surroundings make the cases of the other summer hotels mentioned inapplicable. These claims of the parties, and any testimony adduced in support of them, are entitled to careful consideration by you, in determining the weight to be given to opinions of witnesses as to the alleged injurious effects upon the business of the Fountain House, of the construction and operation of the defendant's road.

Under the ruling which the court has made on the subject, nothing can be allowed the plaintiff for the cost of a retaining wall upon any portion of the defendant's right of way, or along any part of the plaintiff's premises. Some testimony was introduced by the plaintiff to show the necessity and cost of retaining walls at the point where the railroad crosses Newhall avenue. Nothing can be allowed for the expense of such retaining walls. This testimony was offered for the purpose, merely, of

supporting the plaintiff's claim that his premises, outside the right of way, were injured in their use by the construction of the railroad over Newhall avenue, and were thereby diminished in value. Nor should any damages be allowed on account of any improper or negligent construction of the road, or work done within the right of way. It is to be assumed that the road was properly constructed. Further, in this connection, I instruct you that there can be no recovery for loss of land by undermining or crumbling away, outside of defendant's right of way, whether such crumbling away is or shall be caused by defective construction of the road, or by any action of surface water flowing from the plaintiff's land into the cut made by the defendant in its right of way.

The fact has been brought out in the testimony that the defendant's line of road is a trunk line to Chicago. At the suggestion of plaintiff's counsel, I say to you that that fact does not constitute such a special benefit, conferred on the plaintiff's property, as, under the law, should be considered by you in abatement of, or as an offset to, any damages which you may find the plaintiff entitled to recover.

You have been permitted to view the premises in question. The object of this view was to acquaint you with the physical situation, condition, and surroundings of the premises, and to enable you better to understand the evidence on the trial. The knowledge which you acquired by the view may be used by you in determining the weight of conflicting testimony respecting value and damage, but no further. Your final conclusion must rest on the evidence here adduced.

In arriving at a verdict, it is your duty, not only to weigh with care and scrutiny all the testimony which has been produced before you, but also to attempt, so far as possible, to reconcile the conflicting testimony upon questions of value and damages. As I said in the outset, there is a wide diversity in the testimony of different witnesses as to the value of the plaintiff's land actually taken, and the depreciation in value of that part not taken. In attempting to reconcile the conflicting opinions of witnesses, you should carefully consider the different theories upon which such opinions are based. See, on the one hand, if witnesses have exaggerated the values which they have placed on the land, or any part of it, or the elements of injury which enter into their estimates of depreciated value, or whether they have included elements of injury which do not exist, or which should not be considered. See, on the other hand, if witnesses have unduly diminished values or the elements of injury which enter into their estimates, or whether they have omitted altogether elements of injury which in fact exist and should be considered. See if the theories upon which the witnesses on either side proceed in reaching their conclusions are sound or fallacious, and, as you apply these and similar tests, you may be able to reconcile conflicting testimony, give it all due weight, and arrive at just results.

It is due to counsel on both sides to observe, in conclusion, that by their learning and ability, so signally displayed on the trial, we have all been greatly aided in the investigation of the law and facts of the case. Rarely do we have opportunity to listen to arguments of greater excel-

lence than those which have been made in this case; and the court is confident that in arriving at a verdict you will faithfully endeavor to do justice between the parties.

Your verdict must be for the plaintiff for some amount, and you will allow him interest at 7 per cent. on whatever sum you find him entitled to recover, from the twenty-second day of September, 1885.

Verdict for plaintiff for $16,177.77.