## HOT SPRINGS RAILROAD COMPANY *v.* WILLIAMSON.

ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 93. Submitted November 11, 1889. — Decided May 19, 1890.

The refusal of the court below to grant the defendant's request to charge upon a question in relation to which the plaintiff had introduced no evidence, and which was, therefore, an abstract question, not before the court, was not error.

When a state constitution provides that " private property shall not be taken, appropriated or damaged for public use without just compensation " a railroad company constructing its road in a public street, under a sufficient grant from the legislature or municipality, is nevertheless liable to abutting owners of land for consequential injuries to their property resulting from such construction.

THE case is stated in the opinion.

*Mr. John M. Moore* for plaintiff in error.

*Mr. A. H. Garland* for defendant in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

This is an action at law brought in the Circuit Court of Garland County, Arkansas, at its February term, 1883, by Curnel S. Williamson and Fannie G. Williamson, his wife, against the Hot Springs Railroad Company, a corporation organized under the laws of that State, to recover damages

for alleged injuries done to certain described real estate belonging to Mrs. Williamson, in the city of Hot Springs, by the defendant company.

The declaration alleged that the plaintiff, Fannie G. Williamson, was the owner in fee of lots 1 and 2 in block No. 78 and lot 9 in block No. 69 in that city ; that lots 1 and 2 are separated from lot 9 by Benton Street, which is one hundred and forty feet wide, and was laid out by the general government and dedicated to the city, with the other streets in the city, before the damages for which suit was brought were committed ; that lot 9 lies south of Benton Street, lot 1 directly across the street on the north, and lot 2 lies immediately north of lot 1 ; that the defendant, a railroad company, organized as aforesaid, with its termini at Hot Springs and at Malvern, in Hot Springs County, in that State, by and through its agents and employés, on and prior to the 10th of December, 1881, constructed, threw up and completed in and along the centre of Benton Street, between lots 1 and 9, and running the full length of those lots, a permanent embankment of earth and stone, fifty feet wide and of great height, to serve as a road-bed for its railroad track, under a fraudulent and unauthorized contract secretly and clandestinely entered into between it and the city, for the purpose of defrauding and injuring plaintiffs ; that the defendant also constructed a turning table at the southeast corner of that embankment and the northeast corner of lot 9, and immediately thereafter proceeded to lay and fix its railroad track permanently on the embankment, which thereby became and thereafter was a part or extension of its railroad ; that by the embankment, extension and turning table plaintiffs and others were cut off from and deprived of the use of that street in connection with said lots, and their egress and ingress therefrom and therein impaired and destroyed ; that said lots, which, by reason of their lateral frontage upon Benton Street, were of great value, were thereby greatly damaged and decreased in value to the extent of five thousand dollars ; and that since the dedication of Benton Street to the city, the defendant had wrongfully appropriated almost the whole of it for its road-bed and other

purposes, thereby wantonly injuring plaintiffs and all other owners of land adjoining that street. The prayer of the petition was for a judgment against the defendant for $5000, and for other relief.

The defendant answered, pleading ignorance as to whether the plaintiff, Fannie G. Williamson, was the owner of the lots described in the petition, and averring that those lots were located upon Malvern Avenue, one of the original streets of the city of Hot Springs, which was laid off by the city and opened and continuously used thereafter as a street, and was never vacated by the city. Further answering, it alleged that its railroad was constructed in and upon its right of way granted it by Congress under the act of March 3, 1877, entitled "An act in relation to the Hot Springs Reservation, in the State of Arkansas," 19 Stat. 380, c. 108, § 17; and under the alleged ordinance of the city, which, it denied, had been passed clandestinely or through any fraud on its part; and also alleged that the turn-table complained of was constructed on its right of way, and upon lots 10 and 11, in block 69, in the city, which were defendant's own property. As a further answer, the defendant alleged that Curnel S. Williamson was improperly joined as a plaintiff in the action.

At the trial of the case before the court and a jury, the following agreed statement of facts, together with a map also agreed upon as correct, was filed :

"1st. The accompanying map shows the location of Malvern Avenue, Benton Street, the plaintiff's lots, and the right of way granted by Congress to the defendant under the act referred to in defendant's answer, and approved by the Hot Springs Commission and the Secretary of the Interior.

"2d. The extension claimed by the defendant under the ordinance of the city of Hot Springs consists of a strip fifty feet wide, the centre thereof on a direct line with the centre of the right of way granted by Congress and extending westward to Malvern Avenue, a distance of 130 feet.

"3. The turn-table is fifty feet in diameter ; it is located as marked on the map. Lots 10 and 11, in block 69, upon which a part of the turn-table is located, belong to the defendant.

" 4th. Gaines Avenue was located as a street of said city of Hot Springs and opened and accepted by the city in 1876, October or September; it was 80 feet wide and the northern boundary thereof was about coterminous with the northern boundary of defendant's right of way. The right of way is 100 feet wide, subject to explanation."

The map referred to shows that Benton Street and the right of way run almost east and west, the right of way extending south to the south line of Benton Street. Immediately east of lot 9, and also adjacent to the right of way, is lot 10, and immediately beyond that is lot 11. The turn-table is located partly on the right of way and in part on the company's lots 10 and 11; and appears to be about 40 feet east of the east line of lot 9, and nearly the same distance east of the western extremity of the right of way granted by Congress. Malvern Avenue runs nearly from the southeast to the northwest, and is 130 feet west of the western terminus of the right of way.

Considerable testimony was introduced on both sides, on the question of damages as presented by the pleadings, and upon that question alone the evidence was conflicting. Evidence was also introduced on the part of the defendant to show that the alleged obstructions erected by it were such as are generally used at terminal stations, and were necessary for the operations of the road. One of its witnesses testified that " without the turn-table the train could not be run on the right of way within the city of Hot Springs without great danger to life and property, for without (it) the engines could not be turned and would have to be run in back motion either in departing from the depot or coming to it. This would be specially dangerous at night, as the head-light could not be seen while the engine was in back motion."

The embankment was described by the witnesses as being fifty feet wide and several feet higher than the grade of the street, and is enclosed by a granite wall. It is 25 feet from lot 9 on the south, and 65 feet from lot 1 on the north.

The ordinance of the city council granting a right of way fifty feet wide from the western terminus of the congressional right of way to Malvern Avenue (130 feet) was also introduced,

and it was admitted that the company had filed its written acceptance of the same within ten days from its passage, as required by section 4 thereof. It also appeared in evidence that the city had, by an ordinance approved February 26, 1883, "authorized and empowered" the defendant "to erect all necessary and suitable depot buildings and other structures incident to the operation of its road within the limits of its 'right of way,' granted it by Congress, . . . and to maintain and continue the same, or any depot buildings or other erections or improvements heretofore constructed or made by it." That ordinance further provided that that part of Benton Street, for two squares east of Malvern Avenue, "within the limits of the 'right of way' granted by Congress, . . . and the extension thereto heretofore granted by the city of Hot Springs, except so much thereof as shall be required to leave open the crossing of Cottage Street, [first street east of Malvern Avenue,] is hereby vacated and closed, and the extensive [exclusive] use and control thereof is granted to the Hot Springs Railroad Company for railroad and depot purposes."

After the testimony in the case had been closed, upon request of the plaintiff, the name of C. S. Williamson was dropped from the complaint, and his evidence was also excluded from the jury.

At the request of the plaintiff the court charged the jury as follows:

"I. The court instructed the jury that the right to use streets in a city by the adjoining lot owners is property and a right of way belonging to the owner of said lots, and that no such right can be taken or injured or appropriated to the use of any corporation until full compensation therefor shall be first made to the owner in money or secured to him by a deposit of money, which compensation is irrespective of any benefit from any improvement made by said corporation.

"II. The city of Hot Springs had no right to pass an ordinance granting the defendant a right of way along Benton Street, and defendant could acquire no right to build any permanent structure or lay its track thereon by virtue of such ordinance.

"III. The court instructs the jury that the measure of damages to adjacent property caused by the use of a street, as a site for a railroad, is the diminution of the value of the property, and the recovery may include prospective as well as past damages when the obstructions to the use of the street are of a permanent nature."

The court, upon its own motion, instructed the jury : "That if they believe from the evidence that the defendant, by its agents or employés, constructed in Benton Street, between lot 9, in block 69, and lots 1 and 2, in block 78, in the city of Hot Springs, a permanent embankment, as a road-bed on which to lay and extend its railroad track, and then, or before the commencement of this suit, placed and fixed its track permanently upon said embankment, as charged in the complaint ; that said lots, or any of them, were or are permanently injured or damaged thereby, and that said lots were then and still are the property of the plaintiff, Fannie G. Williamson, they must find in her favor, and, in such case, the difference between the present value of the lot or lots so damaged with the embankment, and the said track thereon existing, and what such value would be if the embankment and said track were removed or had never existed, is the measure of damages." To all of which instructions the defendant at the time excepted.

The defendant requested the court to give several instructions to the jury, which the court declined to do, except in one instance, in a modified form, to which refusals the defendant at the time excepted ; but as none of them are relied upon in the argument in this court except the second one, it is only necessary to set that one out in full. It is as follows :

"The right of way was granted by Congress to the defendant from a point on the eastern boundary of the Hot Springs reservation to the old Malvern stage road within said reservation. The grant carried with it the right to erect and maintain all suitable structures usual and necessary to the operation of a railroad, including a depot, station-house and such tracks and other improvements of that nature as are necessary to the proper and convenient dispatch of its business ; and if you find that the turn-table and other improve-

ments complained of, or any part of them, are within the right of way granted by Congress to the defendant as aforesaid, and are necessary to the operation of its road, and such as are usual at terminal stations, you cannot find for the plaintiffs by reason of any damage caused to their lots by such improve- ments."

The jury returned a verdict in favor of the plaintiff for the sum of $2275, upon which judgment was rendered ; and after a motion for a new trial and also a motion in arrest of judgment had both been overruled, an appeal was taken to the Supreme Court of the State, which affirmed the judgment of the trial court. 45 Arkansas, 429. This writ of error was then sued out.

The following is the only assignment of error :

" The court erred in ruling that the plaintiff in error did not have the lawful right to construct its works, including the turn-table, on the right-of-way granted it by the act of Congress of March 3, 1877, and in holding that it was liable to the defendant in error by reason of the alleged obstruction caused by said works."

From the foregoing statement it is observed that the claim for damages in the trial court was based upon two proposi- tions : First, that the plaintiff's property was injured by reason of the embankment in Benton Street alongside it, west of the terminus of the congressional right of way ; and, second, that it was also injured by reason of the construction and existence of the turn-table partly upon the congressional right of way — no claim for damages ever having been made by reason of the construction of a road-bed and track upon the congressional grant.

It is also observed that, while the defendant saved excep- tions to the various rulings of the court, on the question of damages arising from the construction of the embankment on that part of Benton Street separating the plaintiff's lots, and also as to the rule for the computation of such damages, none of those exceptions are embodied in the assignment of error, nor is any point made in relation to them in the brief of counsel for the company. In his own language, " The only

question before this court is that which arises under the act of Congress, . . . and relates alone to the turn-table and works constructed on that part of the right-of-way embraced in the grant by Congress. This excludes from consideration the embankment built upon the western extension of the track, under the city ordinance, and involves the proper construction of the act of Congress."

The question before us is, therefore, narrowed down to the ruling of the trial court upon the only issue which the assignment of error presents. Upon an examination of the record it will be found that no evidence was introduced by the plaintiff as to whether the turn-table and other works constructed on the right of way injured and damaged her property at all; and the only evidence on that subject was introduced by the defendant, which evidence tended to show that, by the erection of a depot and other works on the right of way, property in that vicinity had not only not been depreciated, but had, in reality, risen in value.

It is further observed that in its charge to the jury the court made no reference whatever to the question of damages arising out of the construction and operation of the turn-table and other works on the congressional right of way, except that it refused to charge that the defendant had the right to construct and maintain whatever structures thereon it might deem essential to its business, as above set forth in detail; or that, having that right, it was not liable to the owners of abutting real estate for damages caused by the exercise of that right in a proper and skilful manner. Inasmuch, therefore, as the plaintiff introduced no evidence to sustain that branch of her claim for damages, the court was constrained to conclude that it was eliminated from the case. She certainly could not obtain a verdict for any damages arising out of that branch of the claim without introducing any evidence to support it. The evidence which the defendant introduced bearing on that question, if taken into consideration by the jury at all, could not have had any but a favorable effect as to the defendant; but, as already remarked, it was rendered unnecessary by the plaintiff's virtual abandonment of that part

of her claim for damages.   There is nothing in the record to show that that evidence was considered by the jury in arriving at their verdict, because no charge relative thereto was given by the court, or could legally have been given by it on that question.   The refusal of the court to charge upon an abstract question in relation to which the plaintiff had introduced no evidence, and which was not, therefore, before it, was not error.

Whilst we hold this view upon the sole question involved in the assignment of error, it is proper to add that we concur in the view taken of this case by the Supreme Court of Arkansas. That court held that the act of Congress granting the right of way to the defendant company over the strip of land upon which its road was to be operated, (which in this case was along the line of Benton Street, an original street in the town of Hot, Springs, and used as such at the time of the passage of the act,) carried with it the right to construct, maintain and operate its line of railroad therein, and to appropriate such right as a location for its turn-table and depots and for any other purpose necessary to the operation of its road; but that it was equally clear, under the provisions of the present constitution of the State of Arkansas, that if in the exercise of that right the property of an adjoining owner was damaged in the use and enjoyment of the street upon which the road was located, such owner would be entitled to recover such damages from the company.   It further held that the contention of the plaintiff in error that the act of Congress invested it with an absolute title to the street along which its road was located, and exempted it from any liability for consequential damages resulting to an abutting owner from the laying of its track in a proper and skilful manner, was founded upon cases arising under the familiar constitutional restriction that private property shall not be taken for public use without compensation; which decisions generally turned upon the question what is a *taking*, within the meaning of such provision ; that the constitution of that State of 1878, which provides that "private property shall not be taken, appropriated or damaged for public use without just compensation," has changed that rule;

that all the decisions rendered under similar constitutional provisions concur in holding that the use of a street by a railroad company as a site for its track, under legislative or municipal authority, when it interferes with the rights of adjoining lot owners to the use of the street, as a means of ingress and egress, subjects the railroad company to an action for damages, on account of the diminution of the value of the property caused by such use; and lastly, that even conceding the authority of the town of Hot Springs to pass the ordinance authorizing the company to construct and maintain the railroad embankment, track and turn-table complained of, it cannot impair the constitutional right of the defendant in error to compensation.

We think those views are sound and in accordance with the decisions of this court in *Pennsylvania Railroad Company* v. *Miller*, 132. U. S. 75, and *New York Elevated Railroad* v. *Fifth Nat. Bank*, decided May 5, 1890, 135 U. S. 432.

The judgment of the court below is.

*Affirmed.*