## SEBASTIAN BRIDGE DIST. v. MISSOURI PAC. R. CO.

(Circuit Court of Appeals, Eighth Circuit. August 9, 1923.)

No. 6051.

**1. Appeal and error ⬅︎1067—Refusal of instructions not prejudicial not ground for reversal.**

Refusal of requested instructions is not ground for reversal, where, in view of the instructions given, it could not have been prejudicial.

**2. Bridges ⬅︎12—Assessment of benefits on property of district.**

In the assessment of benefits on the property of a district from the construction of a bridge only such benefits as may accrue to property from the completed structure may be considered, and a railroad company owning property in the district cannot be assessed for benefits because of what it may earn by carrying men and materials for building of the bridge.

**3. Appeal and error ⬅︎1031(5)—Court will not presume prejudice from possible error.**

The appellate court will not presume prejudice from possibly improper argument by counsel.

**4. Eminent domain ⬅︎90—Legal injuries from construction may result from "taking" of property or may be incidental.**

Injuries from a public improvement, as a bridge, for which a property owner is entitled to compensation may result from a "taking" of property within constitutional provisions, or there may be incidental injury to rights of private property which do not constitute a taking.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Taking (In Eminent Domain).]

**5. Eminent domain ⬅︎2(1)—Construction of a public bridge is not a "taking" of the property of the owner of a competing toll bridge.**

Injury which may result to the owner of a toll bridge from the construction of a public bridge, which will be used in competition, does not constitute a "taking" of his property, where he has no exclusive franchise.

**6. Bridges ⬅︎12—Property owner held entitled to set off damages against benefits assessed against his property by reason of construction of bridge.**

Under a special act creating a bridge district and authorizing assessment of the property therein for the building of a bridge, based on "the benefit that will accrue by reason of the construction of the bridge," defined as "the difference in the value of the real property * * * without said improvement and the value thereof as benefited by said improvement," where a property owner operated a toll bridge, with which the public bridge would come in competition, and neither the Constitution nor statutes of the state gave it any other remedy for its loss of tolls, which would result from use of the free bridge, it is entitled to set off such injury in reduction of benefits assessed against its property.

**7. Bridges ⬅︎12—Railroad company held entitled to set off damages from loss of traffic against assessment of benefits from construction of a bridge.**

A railroad company, whose property is assessed for benefits from construction of a public bridge, *held* entitled to set off against such benefits damages from loss of traffic which would result from use of the bridge.

**8. Eminent domain ⬅︎145(1)—Damage to property and benefits from public improvement may be set off against each other.**

While the ascertainment of damages for property taken for a public improvement is a judicial function, and the assessment of benefits to secure funds for making the improvement is an exercise of the taxing power, and is a legislative function, it is within the power of the Legislature to provide that the two proceedings may be conducted together, and that the damages and benefits may be set off against each other.

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**9. Bridges ⬦═12—Damages not subject of set-off in assessment of benefits.**

Under a special act (Acts Ark. 1913, p. 380) creating a bridge district, with power to condemn land for a bridge, and providing that damages therefor "shall be assessed irrespective of any benefit such owner may receive from any improvement proposed by such district," and also for assessment of benefits on the land in the district to pay for the improvement, on the assessment of such benefits any damages which are in their nature recoverable in condemnation proceedings or suits for damages may not be set off against benefits.

**10. Bridges ⬦═12—Damages not recoverable by railroad company because bridge will prevent its use of street for station grounds.**

A railroad company cannot claim damages because construction of a public bridge will prevent enlargement of its station grounds, where the only interference would be with its use of a public street, to which it has no right.

**11. Bridges ⬦═12—Judgment setting aside assessment of benefits does not preclude new assessment.**

A judgment of a court setting aside an assessment of benefits from the construction of a bridge, because of the failure to allow a set-off for injuries, does not preclude a new assessment. ·

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action by the Missouri Pacific Railroad Company against the Sebastian Bridge District. From the judgment, defendant brings error. Affirmed.

Certiorari denied 44 Sup. Ct. 37, 68 L. Ed. ——.

James B. McDonough, of Ft. Smith, Ark., for plaintiff in error.

Thomas B. Pryor, of Ft. Smith, Ark. (Edward J. White, of St. Louis, Mo., on the brief), for defendant in error.

Before STONE, Circuit Judge, and TRIEBER and JOHNSON, District Judges.

STONE, Circuit Judge. By a special act of the Arkansas Legislature (Acts 1913, p. 380), the Sebastian bridge district was organized for the purpose of building a free vehicular bridge across the Arkansas river from a designated point in Garrison avenue, Ft. Smith, Ark. The act defined the boundaries of the district; authorized payment for the improvement by benefit assessments; limited assessments to 10 per centum of the assessed valuation of the real estate benefited; prescribed actual benefits as the basis of apportionment; and provided that railways should be assessed the same as other property "except that said assessment should be made per mile." Under the act, this assessment was made by a board of assessors. From the determination of the board an appeal was allowed to a board of commissioners and from the commissioners to the county court. The assessors determined a horizontal benefit of 10 per centum on the actual value (as found by them) to all real estate in the district. This railway, having been assessed, appealed to the commissioners and, in turn, to the county court, at which latter point it removed the matter to the federal court, where a hearing was had before a jury. The verdict was that this property was benefited, but not to the extent found by the assessors; that this property was not discriminated against by the assessors and that the

assessors had not considered damage or injury (including loss of tolls from a nearby toll bridge owned and operated by this railway) from the improvement as affecting the net benefits to be derived therefrom. Upon this verdict the court entered a judgment, which recited that:

"* * * It appearing from said verdicts that the property of the defendant will not be benefited 10 per cent. of its value over and above the injury or damage to its property, and it further appearing from answer to special interrogatory that the board of assessors did not take into consideration in assessing the benefits any damage to the property [or] loss of tolls resulting from the construction of the bridge,"

—and canceled the assessment of benefits against this railway. From that judgment, the district has sued out this writ of error.

While this case was argued and submitted with that of St. Louis-San Francisco Railway Company v. Sebastian Bridge District, the issues presented here in the two cases and which we find necessary to determine are different. In the other case, the jury found that the assessors considered "any damage to said railroad property resulting from the construction of the bridge" and concluded that the actual benefit "over any injury or damage to said property" equaled the amount assessed and, also, that there was no discrimination against that property. In this case, the jury found that the assessors had not considered "any damage of said property [or] loss of tolls resulting from the construction of the bridge" and that the property, although benefited, was not benefited to the amount assessed.

The points argued here as error are (1) permitting the jury to consider the matter of alleged damages as an offset in determining benefits; (2) permitting the jury to consider loss of tolls on defendant in error's toll bridge as such an offset; (3) refusal to charge that the act of the Legislature creating the boundaries of the district determined that all real property therein would be benefited; (4) refusal to charge that the jury should consider, as benefits, the saving to the railway in not being compelled to build a viaduct over its tracks where they were crossed by the bridge; (5) refusal to charge that increased business of the railway in immediate connection with the building of the bridge might be considered as benefits; (6) improper argument to the jury by counsel for the railway; (7) refusal to direct verdict on the pleadings and verdict of the jury.

In order to concentrate consideration upon the really important propositions involved here, it is helpful to employ a process of elimination by disposing of those which cannot be controlling upon this appeal. This elimination will apply to the third, fourth, fifth, and sixth propositions above stated.

[1] The third proposition is based on the refusal of two requests to charge as follows:

"The court instructs the jury that the act of the Legislature creating the Sebastian bridge district creates an improvement district and determines the question that all real property located in the district is benefited thereby, but leaves to the sound judgment of the assessors the amount of that benefit. This does not preclude the assessors from determining and deciding that no piece of property is benefited at all. The question of whether or not any particular piece of property is benefited, is left to the sound discretion of the assessors, subject to review as provided in the act."

"Under the legislative act creating this district, the presumption is that every piece of real property located in this district is benefited to some extent."

The sole benefit which could have ensued to plaintiff in error through having these requests given would have been to gain the weight of a presumption that *some* benefit to this property existed. These requests recognized the power of the assessors to find that, in fact, no benefit did exist. The plaintiff in error fully secured the practical and substantial effect of these requests when the court charged that:

"The presumption of law is that these assessments are reasonable, just and fair. The burden is upon the railroads to show that said assessments are unjust or arbitrary or otherwise defective."

Also, the jury found that there was a benefit. Therefore, conceding (without deciding) that the requests were proper, yet the above convinces that no prejudice resulted from the refusal to give them.

The fourth proposition is not preserved in the record and cannot be considered.

[2] The fifth proposition is that the court erred in the portion of the charge following:

"You are instructed that under the law revenue realized by the railroad companies for freight and material transported by said companies and used in the construction of the bridge, or for passenger fares received for transporting workmen to Ft. Smith to work on said bridge are not proper elements to take in consideration in determining whether or not said railroad company which has been assessed will in fact be benefited by said bridge, and the court charges you that you can [not] take the same into consideration in determining whether or not said property will be benefited by the construction of said bridge. The instruction that I have just read to you, gentlemen, is applicable to that testimony that was introduced with reference to the freight that these railroad companies had received or transported, that was used in the construction of the bridge, and in the paying of passenger fares for transportation of workmen who intended to work upon the bridge. The law contemplated the benefit to be derived from the completed structure, not the structure in the course of construction. Now that is simply applicable to that class of testimony so far as added business is concerned."

For the reasons therein given, the charge as given correctly stated the law.

[3] The sixth proposition relates to two statements made during argument by counsel for defendant in error. The first of these statements was:

"The Constitution guarantees to you your liberty, and the third thing it guarantees is property—life, liberty and property. And the Constitution of the United States says, also the Constitution of Arkansas, that no citizen—and the railroads are citizens under the law, although they are not entitled to a vote in any election that is called for the purpose, but they are treated and considered as citizens—that the property of no citizen shall be taken or damaged for private use without just compensation. You have got to pay them for their property when you take it, or damage it. Now, gentlemen, it is useless. You can't overcome it, argument can't overcome it. As I said before in considering the question of whether that property is benefited, you will take into consideration the effect on the physical property itself, and as far as the Missouri Pacific Railroad Company is concerned the loss of tolls. Then you will be doing something that the board of assessors refused to do; you will be doing something to equalize the scales, and reach a con-

clusion as to our benefit, that we have never yet had done. Perhaps you hear it argued to you that this is a matter that should not be considered. You have heard it in the pleadings, in the opening statement in this case, that the Missouri Pacific had no right to claim the tolls down there. I brought a man from St. Louis to testify to show you where that money went. It was collected as a part of the revenue of the Missouri Pacific. It went into the general operating fund of the Missouri Pacific and was a part of that fund, and yet, gentlemen, Mr. Moss told me when we went before him and the board—John Ayers was a good man, the city of Ft. Smith never suffered a greater loss in any of its citizens than it did when John Ayers went to the beyond, a good man, but they had this idea that regardless of the question of benefits or damages, they were there for one purpose only. What was your purpose, Mr. Kuper? *Listen, gentlemen, this applies to you, too; you don't know when this principle is going to come home to you in an improvement district.*"

The propriety of the italicized sentence. is attacked, and it is not free from doubt. However, we are confident that no prejudice resulted therefrom and will not presume such prejudice from the mere existence of possible error (40 Stat. 1181, Comp. Stat. 1919 Supp. § 1246). The second statement covered by this sixth proposition was not only unobjectionable in itself but was explained by the court in precise accordance with the views of plaintiff in error.

The first, second and seventh propositions remain and present the important controversy in the case. That issue, as urged by plaintiff in error, is that in estimating the benefits from the improvement no damage or injury therefrom can be used in reduction or set off thereto. It is claimed that all manner of damages, legally allowable, must, under the laws of Arkansas, be assessed in proceedings separate from that having to do with assessment of benefits.

[4] Injuries from public improvements are of two kinds: Such as would be a "taking" within the meaning of constitutional provisions and condemnation proceedings. and such as would not. Within the term "taking," as here used, is included all character of damages or injury recoverable in condemnation proceedings or equivalent suits for damages by the owner of property taken or damaged. There are legal differences governing the treatment and application of each of these two classes in relation to public improvements, which should be borne in mind. The authorization of a public improvement is an exercise of the police power of the states (Hagar v. Reclamation District, 111 U. S. 701, 704, 4 Sup. Ct. 663, 28 L. Ed. 569; Wurts v. Hoagland, 114 U. S. 606, 5 Sup. Ct. 1086, 29 L. Ed. 229; Shoemaker v. U. S., 147 U. S. 282, 297, 13 Sup. Ct. 361, 37 L. Ed. 170; Paulsen v. Portland, 149 U. S. 30, 40, 13 Sup. Ct. 750, 37 L. Ed. 637; Fallbrook Irrig. Dist. v. Bradley, 164 U. S. 112, 163, 17 Sup. Ct. 56, 41 L. Ed. 369; Field v. Barber Asphalt Co., 194 U. S. 618, 624, 24 Sup. Ct. 784, 48 L. Ed. 1142; O'Neill v. Leamer, 239 U. S. 244, 252, 253, 36 Sup. Ct. 54, 60 L. Ed. 249), or, where done by the United States, usually an exercise of the commerce power (Greenleaf-Johnson Lumber Co. v. Garrison, 237 U. S. 251, 35 Sup. Ct. 551, 59 L. Ed. 939, and numerous citations therein). In either case, if property is "taken," just compensation must be made. But injury may result which amounts to loss without necessarily constituting, in a legal sense, such "taking."

Joslin Mfg. Co. v. Providence, 43 Sup. Ct. 684, 67 L. Ed. ——, decided by Supreme Court on June 11, 1923; Omnia Commercial Co. v. United States, 43 Sup. Ct. 437, 67 L. Ed. ——, decided by Supreme Court on April 9, 1923; Greenleaf-Johnson Lumber Co. v. Garrison, 237 U. S. 251, 35 Sup. Ct. 551, 59 L. Ed. 939; C., B. & Q. Ry. Co. v. Illinois, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; Scranton v. Wheeler, 179 U. S. 141, 21 Sup. Ct. 48, 45 L. Ed. 126. The distinction is "between an incidental injury to rights of private property resulting from the exercise of governmental powers, lawfully and reasonably exerted for the public good, and the *taking,* within the meaning of the Constitution, of private property for public use." C., B. & Q. Ry. Co. v. Illinois, 200 U. S. 561, 583, 26 Sup. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175.

[5] The above distinction is here pertinent because some of the items of injury involved in this case belong to one and some to the other of these two classes. These items are loss of air, light, and access, increased hazard in operation, loss of tolls from a nearby toll bridge belonging to defendant in error and permanent loss of business. It is conceived that loss of air, light, and access (Muhlker v. N. Y. & H. R. R. Co., 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872; L. R., M. R. & T. R. R. Co. v. Allen, 41 Ark. 431; L. R., M. R. & T. R. R. Co. v. Shelton & Wells, 45 Ark. 446; Hot Springs R. R. Co. v. Williamson, 45 Ark. 429; Id., 136 U. S. 121, 10 Sup. Ct. 955, 34 L. Ed. 355), and increased hazard in operation (T. & St. L. Ry. Co. v. Cella, 42 Ark. 528; L. R., M. R. & T. R. R. Co. v. Allen, 41 Ark. 431; St. L., A. & T. R. R. Co. v. Anderson, 39 Ark. 167; also see Portsmouth Harbor L. & H. Co. v. United States, 260 U. S. 327, 43 Sup. Ct. 135, 67 L. Ed. 287, decided December 4, 1922) come within the constitutional meaning of a "taking." We think that loss of tolls is not such a "taking," under the circumstances here controlling. While loss of tolls might, under some circumstances, constitute such (Monongahela Navigation Co. v. United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463), yet there is no claim here that defendant in error possesses any exclusive franchise to operate a bridge in this vicinity and, such exclusive right being absent, it can claim no "taking" of its property based on the fact that the natural, or even inevitable, consequence of building a nearby free bridge will be abandonment by the public of the use of its toll bridge with a consequent loss of tolls (Charles River Bridge v. Warren Bridge, 11 Pet. 420, 9 L. Ed. 773; Helena Waterworks Co. v. Helena, 195 U. S. 383, 25 Sup. Ct. 40, 49 L. Ed. 245; Knoxville Water Co. v. Knoxville, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353; United Railroads v. San Francisco, 249 U. S. 517, 39 Sup. Ct. 361, 63 L. Ed. 739; City of Meridian v. Farmers' L. & T. Co., 143 Fed. 67, 74 C. C. A. 21, 6 Ann. Cas. 599). The loss of business claimed arises because the free bridge will open to a competitor traffic territory theretofore reached only by this railway. We think that such loss of business is not such "taking." Joslin Mfg. Co. v. Providence, 43 Sup. Ct. 684, 67 L. Ed. ——, decided by Supreme Court on June 11, 1923; Chicago v. Le Moyne, 119 Fed. 662, 669, 56 C. C. A. 278; Laflin v. C., W. & N. R. Co. (C. C.) 33 Fed. 415, 421; Omaha H. Ry.

Co. v. Cable Tramway Co. (C. C.) 32 Fed. 727, 732; United States v. Inlots, Fed. Cas. No. 15,441; El Dorado v. Scruggs, 113 Ark. 239, 247, 168 S. W. 846; K. C. S. Ry. Co. v. Anderson, 88 Ark. 129, 134, 113 S. W. 1030, 16 Ann. Cas. 784; 20 C. J. 779, § 234, and citations. With this definition of the two kinds of legal "injuries" and the above classification of the injuries here alleged, we turn to the important question in this case of whether such injuries can be used in reduction of or offset to benefits from this improvement.

[6] We think the loss of bridge tolls can be so used for the following reasons: Neither this act nor any general constitutional nor statutory provision of the state makes any provision for any compensation therefor; hence, there can be no independent action for recovery thereof. This is, however, far different from saying that such cannot be considered in connection with ascertainment of benefits. This act requires assessments to be based upon "the benefit that will accrue by reason of the construction of the bridge." It further defines this benefit as being the difference between "the value of the real property * * * without said improvement and the value thereof as benefited by said improvement." It is obvious that the value of the property is directly affected adversely by loss of bridge tolls which annually amount to more than ten thousand dollars. Since this injury is evident, affects the value of the improvement to this property directly, cannot be taken care of in any other manner, is not excluded from consideration, by the act itself in arriving at benefits, is fairly within the terms of the act defining the benefits as the above difference in values, we think the court was right in submitting such elements to the jury in connection with ascertainment of benefits.

[7] We conclude, also, that loss of business such as here claimed may be used as offset to benefits. This loss is of a permanent character. Most of the above-stated reasons for allowing loss of tolls as such a set-off apply equally here. In addition, since increase of traffic is recognized as a benefit for which assessment may be made (Branson v. Bush, 251 U. S. 182, 191, 40 Sup. Ct. 113, 64 L. Ed. 215; Thomas v. K. C. S. Ry. Co., 43 Sup. Ct. 440, 67 L. Ed. ——, decided April 9, 1923, by the Supreme Court), it would seem to follow that loss of traffic should be considered in offsetting other benefits from an improvement where the basis of assessment is actual benefits.

[8] We conclude, also, that the alleged injuries from loss of air, light, access and extra hazard cannot be considered in the same connection for the following reasons: While the authorization of a public improvement by a state is an exercise of the police power, the execution of the improvement usually calls for the appropriation or damage to private property and the payment for such improvement by some form of assessment—general or special. These necessities require the exercise of two other governmental powers: Eminent domain, to secure the property appropriated or damaged (Bauman v. Ross, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270); and taxation, to secure funds (Heine v. Levee Com'rs, 19 Wall. 655, 660, 22 L. Ed. 223; Fallbrook Irrig. Dist. v. Bradley, 164 U. S. 112, 176, 17 Sup. Ct. 56, 41 L. Ed. 369; Bauman v. Ross, 167 U. S. 548, 588, 17 Sup. Ct. 966, 42 L. Ed. 270; Norwood v. Baker, 172 U. S. 269, 277, 19 Sup. Ct.

187, 43 L. Ed. 443). While the taxing power is distinctively a legislative function (Spencer v. Merchant, 125 U. S. 345, 355, 8 Sup. Ct. 921, 31 L. Ed. 763; French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879), and the power of ascertaining compensation in eminent domain matters distinctly a judicial function (Monongahela Navigation Co. v. United States, 148 U. S. 312, 327, 13 Sup. Ct. 622, 37 L. Ed. 463), yet either may be determined by a properly authorized quasi judicial body (Backus v. Fort Street Union Depot Co., 169 U. S. 557, 18 Sup. Ct. 445, 42 L. Ed. 853; Bauman v. Ross, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270; 20 C. J. 1023, § 414 and citations), or both may be submitted to the same body (Columbia Heights Realty Co. v. Rudolph, 217 U. S. 547, 556, 30 Sup. Ct. 581, 54 L. Ed. 877, 19 Ann. Cas. 854), or in the same general proceeding (St. L. & K. C. Land Co. v. Kansas City, 241 U. S. 419, 427, 428, 36 Sup. Ct. 647, 60 L. Ed. 1072; Columbia Heights Realty Co. v. Rudolph, 217 U. S. 547, 556, 30 Sup. Ct. 581, 54 L. Ed. 877, 19 Ann. Cas. 854). Also, while assessment of benefits for local improvements is a legislative function yet the ascertainment of the benefits may be committed to subordinate bodies and such bodies then act in quasi judicial capacity. Hagar v. Reclamation Dist., 111 U. S. 701, 710, 4 Sup. Ct. 663, 28 L. Ed. 569; Parsons v. Dist. of Columbia, 170 U. S. 45, 52, 18 Sup. Ct. 521, 42 L. Ed. 943; Hancock v. Muscogee, 250 U. S. 454, 458, 39 Sup. Ct. 528, 63 L. Ed. 1081. Again, the ascertainment of compensation in eminent domain cases is not necessarily a suit or action in form. It may be committed by the legislative to any tribunal or body so long as a fair hearing upon sufficient notice is accorded. 20 C. J. 872, § 300 and citations.

From the foregoing, it is clear that there are no fundamental legal reasons why the two proceedings—condemnation and assessment of benefits—should not be conducted together. Nor, since benefits may be used to offset or reduce compensation where property is taken (Bauman v. Ross, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270), there seems no reason, in the nature of the matter, why the contrary might not be true. It is within the power of the Legislature of the state to permit or prohibit such mutual balancing of benefits and injuries. With this power, in the nature of the matters, to entirely separate or to combine, to any degree thought by the Legislature desirable, the ascertainment of damages and the ascertainment of benefits, it remains for us to determine what the laws of Arkansas require in this respect.

[9] This district was organized under an act (Acts 1913, p. 380) passed for the specific purpose. Sections 40 to 52, inclusive, relate to acquiring right of way. "Right of way," as used therein, is defined in section 51 as being:

"* * * All the grounds necessary for the construction of the bridge, its piers, abutments, and approaches, and all other necessary land for the purpose of carrying out the construction of said free public bridge."

Section 52 expressly provides that:

"It is the intention and purpose of this act to confer in the preceding eleven sections, the right of condemnation, as now exercised by telegraph, telephone and railroad corporations, under sections 2947 to 2958 of Kirby's Digest so far as the same may be applicable hereto."

In section 40 is the proviso that the land may be taken:

"Provided, just damages shall be paid to the private owners of land taken or used for the bridge or its approaches."

Section 46 provides:

"The amount of damages to be paid the owner of such lands for such right of way for the use of such district shall be determined and assessed irrespective of any benefit such owner may receive from any improvement proposed by such district."

From the foregoing, it is clear that the above sections provided for condemnation proceedings to acquire needed right of way and that benefits should be excluded from computation of the resulting damage to be paid therefor. While there is no expression in the act as to exclusion or inclusion of damages in computing benefits, we think that such exclusion is necessarily implied as to all damages which are, in their nature, recoverable in condemnation proceedings. This, because these sections of this act have been construed to include all "injury" and "damage" to property as well as the bare value of land taken (Fenolio v. Sebastian Bridge District, 133 Ark. 380, 391, 200 S. W. 501); because such injuries and damages have been construed as included within the sections of Kirby's Digest referred to in this act (Hot Springs R. R. Co. v. Williamson, 45 Ark. 429; Id., 136 U. S. 121, 10 Sup. Ct. 955, 34 L. Ed. 355); because to permit recovery of all damages undiminished by benefits in a condemnation proceeding or in a suit by the landowner for damages and also to permit such damages to be used in diminishing (perhaps offsetting) benefits would be to allow double recovery for such damages. As shown above, loss of air, light and access and extra hazard are of that class of injuries which are recoverable in condemnation proceedings or suits for damages. Therefore, they cannot, in Arkansas and under the special provisions of this act, be also utilized in diminishment of benefits.

[10] Another item of damage, covered in the testimony and adverted to in the briefs, is that the bridge is so located as to prevent an extension or enlargement of the station of this railway. The bridge will in no way prevent the railway building on its own ground or upon adjoining ground which it might acquire. It can claim no right to build into the public street where the bridge is located. Texarkana v. Leach, 66 Ark. 40, 48 S. W. 807, 74 Am. St. Rep. 68; Osceola v. Haynie, 147 Ark. 290, 227 S. W. 407.

From the foregoing, it is seen that the only error in the trial court was in permitting the jury to consider loss of light, air and access and increased hazard as an offset in considering whether the benefits assessed actually existed. This error seems to have been harmless. In fact, counsel for plaintiff in error says in his brief, that:

"Under the special verdict, it follows that the jury found against the Missouri Pacific on this issue of fact as to damages by reason of the construction of the bridge. The jury found against the assessment of the Missouri Pacific only on the theory that the Missouri Pacific had lost tolls."

Besides, the evidence is overwhelming that the substantial mistake in the assessment by the assessors was, as found by the jury in its special verdict, the exclusion from consideration of the loss of toll.

292 F.—23

It is also proper, in this connection, to observe that the only effect of the verdict and judgment thereon was to overthrow the assessment—not to make a new assessment along lines of the court's charge. We think this error not prejudicial.

[11] In conclusion, it may be said that the judgment setting aside this assessment does not mean that this defendant in error can escape all assessment of benefits, if any such really exist over the damage from loss of tolls and loss of traffic. Mattingly v. Dist. of Columbia, 97 U. S. 687, 24 L. Ed. 1098; Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763; Norwood v. Baker, 172 U. S. 269, 293, 19 Sup. Ct. 187, 43 L. Ed. 443; Lombard v. West Chicago Park Comm'rs, 181 U. S. 33, 21 Sup. Ct. 507, 45 L. Ed. 731; Columbia Heights R. Co. v. Rudolph, 217 U. S. 547, 30 Sup. Ct. 581, 54 L. Ed. 877, 19 Ann. Cas. 854; Willoughby v. Chicago, 235 U. S. 45, 35 Sup. Ct. 23, 59 L. Ed. 123; St. L. & K. C. Land Co. v. K. C., 241 U. S. 419, 431, 36 Sup. Ct. 647, 60 L. Ed. 1072.

The judgment is affirmed.