ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* MILLER COUNTY.

Opinion delivered February 24, 1900.

1. RAILWAY TAXATION—ASSESSMENT OF STOCKYARDS.—Stockyards used in the operation of a railroad, and necessary to the proper shipment and handling of livestock, should be assessed by the board of railroad commissioners as part of the right of way, under Sand. & H. Dig., § 2781, providing that the words "right of way," as applied to railroads, "include all grounds necessary for sidetracks, turnouts, depots, shops, water stations, and other necessary buildings." (Page 500.)

2. RAILROADS—CONSOLIDATION —WIDTH OF RIGHT OF WAY.—The St. Louis, Iron Mountain & Southern Railway Company, formed in 1874 by the consolidation of the Cairo & Fulton Railroad Company with the St. Louis, Iron Mountain & Southern Railroad Company, a Missouri corporation, was authorized by the statute in force at the date of such consolidation to take a right of way not exceeding 100 feet in width, and did not succeed to the charter right of the Cairo & Fulton Railroad Company to take a right of way 200 feet wide. (Page 504.)

3. TAXATION—ASSESSMENT OF RAILWAY LANDS.—Land belonging to a railroad company, which is not part of its right of way, but is being held to meet the requirements of its probable future needs in the way of additional terminal facilities, is assessable by the local assessor. (Page 504.)

4. SAME—LANDS OMITTED FROM TAX BOOKS.—Where lands have never been placed upon the assessment books until the current year, the county clerk is not authorized to extend against them taxes for the years in which the lands were omitted from the tax books, based upon the assessment for the current year. (Page 505.)

Appeal from Miller Circuit Court.

JOEL D. CONWAY, Judge.

STATEMENT BY THE COURT.

This action was commenced by a petition of the railway company, filed in the county court of Miller county, asking that court to set aside and declare void an asssessment of certain land owned by the company in the city of Texarkana. The different lots of land assessed, with the exception of that por-

tion used by the company for stock yards, lie on each side of the railway tracks of the company, no portion thereof being within fifty feet of any such track. With the exception of the stock yards, no building or structure used in the operation of the railroad is located on the land, nor is any portion of it used as approaches or grounds for any such building. The assessment in question was made in 1897 by the tax assessor of Miller county, and the petition alleged that it was illegal and void for the following reasons:

(1) Because said land is a part of the railroad right of way, and necessary for the use and operation of the railway, and is not subject to assessment by the county assessor.

(2) That the assessor had no authority to assess lands for back or overdue taxes, but undertook to assess the land for the years 1883 to 1897 inclusive, and that for this reason alone the assessment was void, except for the current year 1897.

The county appeared by its attorneys, and filed a response to the petition, denying that the land in question was a part of the right of way, or necessary for the use and operation of the railway, and denying that the assessment was in any respect illegal.

The circuit court, to which the case was carried by appeal, held that so much of the land assessed as was used by the company for stock yards was not subject to local assessment, and ordered such assessment to be set aside, cancelled and held for naught. As to the remainder, it declared that the assessment was valid, and overruled the petition as to the same. Both parties appealed.

*Dodge & Johnson,* for appellant:

The assessor had no authority to assess appellant's lands for back taxes, except in the way provided in the act of 1887, p. 33 (Sand. & H. Dig., § 6438). The county clerk had no power to extend the back taxes against the lands at the same valuation as that of the then current year. The constitution (sec. 5, art. 16) requires uniformity in both the rate of taxation and the mode of assessment. 25 Ark. 298; 49 Ark. 337. The county court had no power or authority to direct the sur-

veyor to make the plat in this case. Railroad property of the class in controversy is assessable only by the state board of railroad commissioners. Sand. & H. Dig., §§ 6464–6480. As to what is included in "right of way," see Sand. & H. Dig., § 2781. The board is made the sole judge of what property is necessary and appurtenant or "adds to the value of such railroad as an entire thing." 52 Ark. 529; 120 U. S. 97. The property in controversy was so situated as to be necessary to and a part of the right of way; and was hence not subject to local assessment. 9 N. E. 93, 97; 72 Ill. 144; 99 Ill. 404; 92 U. S. 575. 113 U. S. 516, S. C. 5 Sup. Ct. Rep. 601; 75 Pa. St. 461; 22 Ind. 262; 18 N. W. 72; 9 Atl. 782; 35 N. J. Law, 537; 129 Ill. 517; 96 Ill. 448; 118 Ill. 136; 55 N. J. Law, 132; 37 Atl. 629; 114 Mo. 1; 89 Mo. 98; 98 Ill. 354; 11 Am. & Eng. R. Cas. 813, 821 n.

*E. B. Kinsworthy, Attorney General,* and *Scott & Jones,* for appellee.

Where lands have inadvertently been omitted by the clerk, and not assessed by the assessor, taxes may be extended for the years during which they escaped taxation. Sand. & H. Dig., §§ 6544, 6441. Tracts of land not within fifty feet of any track or side-track of a railroad do not belong to its right of way, and are subject to local assessment. Sand. & H. Dig., §§ 2763, 6475; 72 N. Y. 200; 22 Atl. 56; 32 Ark. 131. The Cairo & Fulton Ry. Co., from which appellant purchased, claimed only 100 feet as right of way. 31 Ark. 494.

RIDDICK, J., (after stating the facts.) The first question in this case is whether the land of the appellant railway company, which it alleges has been unlawfully assessed, was subject to be assessed by the local assessor, or whether it is property which the statute requires the board of railroad commissioners to value and assess for taxation. The method of taxing property of railway companies imposed by our statute is to treat all such property, forming a part of the railway line, and used in the operation of the railway, as an entirety. It requires that such property shall be assessed by the board of railroad commissioners, and taxed as a whole. This is the best method

of taxing railroads, since any other "would dissect the property into fragmentary parts, and lead to confusion and injustice."   2 Elliott on Railroads, § 737.

But our statute does not authorize the board of railroad commissioners to assess all real estate which may be owned by railroad companies.   The authority of such board to assess land is limited to the railway line and its right of way, with the improvements thereon which add to its value as a railroad. All other real estate must be assesesd by the local assessor. The statute requires the railroad company to "make out and file with the secretary of state a statement or schedule showing the length of the main track and all side tracks, switches, and turnouts in each county in which the railroad may be located, and in each city and town in said county through or into which the railroad may run."   It provides that the company shall state the value of the whole railroad, "taking into consideration in estimating and fixing such value the entire right of way,   *   *   *   and everything upon such right of way and appurtenant to such railroad which adds to the value thereof as an entire thing."   Sand. & H. Dig., §§ 6467, 6468.   It will be noticed that the statute expressly requires that the entire right of way shall be considered in estimating the value of the road.   This, in effect, covers about all the land actually used in the operation of the railroad, for, under our statute, the words "right of way," as applied to railroads, "include all grounds necessary for side tracks, turnouts, depots, shops, water stations, and other necessary buildings."   Sand. & H. Dig., § 2781.

It is clear then that, if the land assessed includes any portion of the right of way of the company as defined by the statute, the assessment was illegal and void, for the assessor has no authority to assess the right of way of a railway company; that power being vested only in the board of railroad commissioners.   On the other hand, if it is not a part of the right of way, it is subject to assessment by county assessor.   After considering the evidence, we are of the opinion that the finding of the circuit judge on this question was correct.   That portion of the land in respect to which he held the assessment invalid

had upon it the stock yards of the company. These yards were used in the operation of the railroad, and were necessary to the proper shipment and handling of live stock. A stock yard is in fact a depot for the reception of a peculiar class of freight, and is a part of the right of way, under the statute above quoted, which provides that the words "right of way" shall include all grounds necessary for depots and other necessary buildings. In a country where cattle and other live stock are shipped to and from nearly every station, a stock yard, or pen for live stock, is almost as necessary to a railway company as a depot for other freight. Speaking of this question, the supreme court of New York said: "It hardly needs an argument to establish that in the city of New York depots for freight and the vast number of cattle and other live stock that are constantly being transported to the city are as much within the purposes for which railroads are constructed, and as necessary to their operation, as depots for the accommodation of passenger traffic. The argument, indeed, is more strongly in favor of the former; for, while a railroad company might, with safety to itself, leave its passengers upon a public street to take care of themselves upon their individual responsibility, it could not do so with respect to the animals it transported, but must securely keep them from injuring and annoying the public until proper delivery to owners or consignees." *N. Y. Cent. R. Co.* v. *Gas Light Co.*, 5 Hun, 201.

But the same argument will apply to every station to and from which cattle and other live stock are shipped. It will certainly apply to a railroad center like Texarkana, where cattle are not only brought for shipment, but where they are transferred from one road to another, and where, in cases of through shipment, it is often necessary that they be taken from the cars for water, feed and rest, before being carried forward to their destination. These yards were surrounded on all sides by the tracks of the company, were a portion of its terminal facilities, and under our statute the county assessor had no authority to assess them or the land covered by them. The court properly declared such assessment to be illegal and void.

As to the other portions of the land which the court held to be properly assessed, none of it lies within fifty feet of

the railway track or side track. It lies outside of such tracks, and none of it was occupied by any structure used in the actual operation of the road, nor was there any portion of it used as approaches or grounds for such a building. A portion of the land had been used by the company as a pumping station, but as to this portion the circuit judge held that it was exempt from assessment by county assessor during the years in which it was so used. After its use for such purpose was abandoned by the company, and when the pumping station was converted into a residence, it became subject to assessment by local assessor.

The statute regulating the assessment of railways directs that the board of railroad commissioners, in fixing the value of the road, shall take into consideration the entire right of way, "as given by the charter of the company or statutes of the state." Sand. & H. Dig., § 6468. We take this to mean that, in the absence of any showing to the contrary, it will, for the purpose of assessment, be presumed that the right of way was of the full width permitted by its charter or the statute, which-ever it may be that authorized the company to take a right of way. Now, the appellant company. was formed by the consoli-dation of the Cairo & Fulton Railroad Company with the St. Louis, Iron Mountain & Southern Railroad Company, the former being a corporation of this state and the latter a Missouri corporation. The charter of the Cairo & Fulton Company gave it the power to take a right of way two hundred feet in width. Appellant contends that it has such power by virtue of the consolidation above mentioned; that a portion of the property assessed was within a hundred feet of its side track, and part of its right of way, which the local assessor had no power to assess. But the fran-chises of a corporation formed by the consolidation of two or more companies are derived wholly from the statute authoriz-ing the consolidation. The new corporation comes into exist-ence precisely as if it had been organized under a charter granted at the date of the consolidation and subject to the con-stitutional provisions then existing. *Keokuk & W. R. R. Co. v. Missouri,* 152 U. S. 301; *St. L., I. M. & S. Ry. Co.* v. *Berry,* 113 *ib.* 465; *St. L., I. M. & S. Ry. Co.* v. *Berry,* 41 Ark. 509; 2 Morawetz, Corp. § 944.

This consolidation took place in April 1874, under the act of 1868. The constitution of 1868, which was then in force, contained the following provisions: "The general assembly shall pass no special act conferring corporate powers. Corporations may be formed under general laws, but all such laws may, from time to time, be altered or repealed. Art. 5, § 48. The general assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens." Art. 1, § 18. The appellant company had, under these provisions of the constitution, no greater right in respect to taking land for its right of way than other railroads, and these rights are subject to be altered from time to time by legislation. It is true that the right of way, with other property rights owned by the Cairo & Fulton Company at the time of the consolidation, passed to appellant company. But there is nothing in the record to show that any portion of the land assessed was ever a part of the Cairo & Fulton right of way. The statute now in force which fixes the right of this and other railway companies to take land for right of way limits that right for ordinary purposes to a width not exceeding one hundred feet. The circuit court, we think, correctly held that for the purpose of taxation the ordinary right of way of appellant on the land sought to be taxed extended only fifty feet from the center of the track or side track.

The evidence shows that the most, if not all, of this land which the circuit judge decided to be subject to local assessment is being held by the company to meet the requirements of its probable future needs in the way of additional terminal facilities at Texarkana. The company has the right, and it may be an act of prudence for it, to acquire and hold land for such a purpose; but this does not make such land a part of the present railroad right of way, as defined by our statute. When the company actually appropriates this property to use in the operation of its railway by constructing thereon side tracks, workshops or other necessary buildings, it may become subject to assessment by the board of railroad commissioners. But, until it does so, such property is subject to assessment by the local

assessor under the provisions of the statute which directs that "all other real estate, including the buildings and structures thereon, other than that denominated railroad track, belonging to any railroad company in this state, shall be listed by the assessor of the county in which they are situated." Sand. & H. Dig., § 6475.

On the question as to whether the assessor had the right to assess the lands for overdue taxes, we have to say that we find no statute giving him such power. In fact, it appears that he made but one assessment, and that was for the current year 1897. On the basis of this assessment for the year 1897, the county clerk extended on the tax books the taxes against such lands for each of the years from 1883 to 1897, inclusive. An assessment made within the time and in the manner prescribed by the statute is indispensable in proceedings to enforce the collection of taxes. Blackwell on Tax Titles, 106. The clerk had no authority to assess land for taxation, and, as there was no legal assessment of these lands for the years preceding 1897, the tax for those years was invalid. The statute, we know, directs that, when lands are omitted from the tax books by mistake, it shall be the duty of the clerk to enter the same on the tax books of the next succeeding year, and to add to the taxes of the current year the taxes of each and every preceding year in which such lands or lots shall have escaped taxation. Sand. & H. Dig., § 6544. But this direction to the clerk presupposes that such lands have already been lawfully assessed. If no assessment of the lands has been made for the years during which they have been untaxed, this must be done in the manner authorized by law, before such land can be lawfully sold for the non-payment of taxes. So far as the lands involved in this proceeding are concerned, the act of March 1, 1887, for the collection of overdue taxes from corporations, provides a method by which they may be assessed, and all unpaid taxes for the past years collected.

While we concur in the judgment of the circuit court that these lots of land should be assessed by the county assessor, yet, for the reasons stated, we are of the opinion that the assessment was illegal and void, except as to the year 1897.

The judgment of the circuit court is to that extent reversed and remanded, with an order to enter judgment in favor of petitioner. declaring the assessment illegal and void for the years named. In other respects the judgment is affirmed.