# LOMBARD *v.* WEST CHICAGO PARK COMMISSIONERS.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 160. Argued January 31, 1901.—Decided April 8, 1901.

The question whether the benefit accruing to each particular tract of real estate assessed by the park commissioners for the payment of the Douglas boulevard equalled the sum of the assessment placed thereon, was foreclosed by the findings of fact of the trial court, to which the case was submitted without the intervention of a jury.

The power of the State of Illinois to levy a special assessment in proportion to benefits, for the execution of a local work, and the authority to confer on a municipality the attribute of providing for such an assessment, is not denied.

Where a special municipal assessment to pay for a particular work has been held to be illegal, no violation of the Constitution of the United States arises from a subsequent authority given to make a new special assessment to pay for the complete work.

The Supreme Court of Illinois decided a local, and not a Federal question, when it held that it was competent on a new assessment to determine the questions of benefit from the proof, even though in so doing a different result was reached from that which had been arrived at when the former assessment, which had been set aside, was made.

THE West Chicago Park Commissioners, in virtue of authority vested in them by the laws of the State of Illinois, proposing to improve Douglas boulevard, and requiring a special assessment to enable them to pay for the work, applied, as the law directed in such case, to the municipal authorities of West Chicago to cause such special assessment to be levied and collected according to law. In March, 1893, the town, acting on this request, adopted an ordinance providing for executing the work and for a special assessment on the abutting property to pay for the same. The only provision of this ordinance which it is essential to note for the purposes of the issues which are now before us is the second section thereof, which provided that the sum of the assessment when made should be payable in instalments, the first being twenty per cent of the whole, and the deferred portions to bear interest at a rate fixed in the ordinance. Following the requirements of the state laws, after the passage of this ordinance, application was made to the county court of Cook County to take the necessary steps to execute the provisions of the ordinance. Pursuant to the directions of the Illinois statutes the court appointed commissioners, who examined and made a full report on the work, and exhibited an assessment roll stating the sum due by the abutting property; the amount assessed on each piece being stated to have been fixed in accordance with the benefits which it was ascertained would result to each piece from the performance of the contemplated work. After notice to those concerned to appear and urge objections, if any they had, to the assessment roll, and after due proceedings in which am-

ple opportunity was afforded to resist the assessment, the court passed a decree of confirmation fixing the amount due by each piece of property in accordance with the report of the commissioners, and declaring that the sum assessed against each piece of property did not exceed the benefit conferred on the property. This decree, however, did not in all respects uphold the assessments made by the commissioners, as it sustained the objections of certain property holders on the ground that the sum assessed against them exceeded the benefits, and as to these objecting property holders, the amount assessed was reduced to correspond with what the court concluded was the actual benefit shown to result. J. L. Lombard was the owner of a piece of property within the assessment district, which had, it seems, been omitted from the roll returned by the commissioners. The decree recited that this property (describing it) had been by consent found to be within the district, and would be benefited to a certain amount, and the sum of this benefit was by consent awarded against the property as described. The assessment, the decree of confirmation provided, was to be paid in instalments as specified.

The collection of the assessment proceeded according to the roll, and the execution of the proposed improvement was undertaken. Some of those who were assessed paid; others did not; and on proceedings being taken as authorized by the laws of Illinois to enforce payment, a controversy arose which, in its final stage, was considered by the Supreme Court of the State of Illinois, and the court decided that the assessment was void and could not be enforced. The reasoning by which the court so decided was this: That under the statutes of Illinois there was no authority to provide for a payment of a special assessment in instalments, and therefore, as the ordinance had fixed that method of payment, it was void. *Culver* v. *The People,* 161 Illinois, 89. And the principle of this case was applied in subsequent cases. *Farrell* v. *The Town of West Chicago,* 162 Illinois, 280; *Connor* v. *Town of West Chicago,* 162 Illinois, 287; *White* v. *Town of West Chicago,* 164 Illinois, 196. The improvement had in the mean while been constructed. The West Chicago Park Commissioners, after the decisions in ques-

tion, dismissed the previous proceedings which had taken place in relation to the assessment. In July, 1895, an act was passed by the legislature of Illinois, which authorized park authorities, whenever a special assessment had been declared void by a court of competent jurisdiction, to " collect a new special assessment on property benefited by said improvement or completed portion thereof in the same manner as in other cases, and the lots, blocks, tracts or parcels of land found benefited by said improvements, or the completed portion thereof, shall each severally be liable to pay for said benefits to the same extent and the same proportion as in other cases." Hurd's Statutes of Illinois, 1899, chap. 105, sec. 20, p. 1244.

After the passage of this law the West Chicago Park Commissioners in July, 1896, adopted an ordinance providing an assessment to pay for the work of improving Douglas boulevard, which had been completed, as above stated. The first section of the ordinance, by way of preamble, recited the occurrences substantially as above stated. The second and third sections were as follows:

" SEC. 2. That a new special assessment on the property benefited by said improvement, to the amount that the same may be legally assessed for, be levied to pay the cost of said boulevard improvement above specified, and the remainder of such cost be paid by general taxation, viz., from the general funds of this board, all in accordance with an act of the general assembly of the State of Illinois, entitled 'An act to enable the park commissioners or park authorities to make local improvements, and provide for the payment thereof,' approved June 24 and in force July 1, 1895.

" SEC. 3. That the estimate of the cost of the said improvement be made by this commission and spread of record."

Subsequently the park commissioners made an estimate and report, and application was made to the county court of Cook County for the enforcement of an assessment roll prepared by the park commissioners in accordance with the estimate. This roll stated the total amount of the cost of the work, and charged the individual proprietors in the aggregate with a large portion of the total amount because of the special benefits conferred by

the work upon them, the remainder—an insignificant part—of the cost was charged to the public, because of the general benefit to the public which, it was found, had been produced by the doing of the work. The sum charged against the individual property holders was distributed among them, and this distrbution was shown by a statement containing the name of the owners, the lot owned by him, the total amount of the assessment, the sum to be deducted from this total in consequence of the instalments which had been paid on the former and void assessment, the net result of the benefit after making this deduction being stated in a separate column. To this roll was appended the certificate of the park commissioners, as required by law, that—

"Before entering upon their said duties they examined the locality where the said completed improvement has been made, and the lots, blocks, tracts and portions of land which are specially benefited thereby, and did estimate what proportion of the total cost of said completed improvement is of benefit to the public, and what proportion thereof is of benefit to the property benefited, and did apportion the same between the said park district and such property, so that each should bear its relative equitable portion; . . . that having found said amounts they did apportion and assess the amount so found of benefit to said property upon the several lots, blocks, tracts and parcels of land in the proportion in which they are benefited by said completed improvement, and that no lot, block, tract or parcel of land has been assessed the greater amount than it has been actually benefited thereby; that said assessment roll also shows the credit to which each lot, block, tract of land so specially assessed is entitled to, if any, for or on account of payments on previous assessments or instalments thereof, and the net amount of benefits assessed thereon."

The amount of the assessment against the individual lot owners for benefits in the new roll differed from the sum assessed in the previous one. Indeed, the new roll disregarded the reductions which had been decreed in the previous proceedings as to certain of the lot owners, since it increased the amount due by these owners over the sum fixed by the previous decree.

The property of Lombard, which had been placed upon the previous roll by consent at a particular amount, was placed upon the new roll for a larger sum than that shown in the previous roll.   After publication of notice of the filing of the roll the present plaintiffs in error appeared in the county court of Cook County and objected to the confirmation of the roll.   The objections which were urged were numbered from 1 to 18, and denied the validity of the new roll upon many grounds, all of which involved purely matters of local and non-Federal concern. They subsequently filed a motion to cancel the assessment on eight specified grounds, none of which involved the Constitution or laws of the United States.   And this is also true of amended objections which were filed.   Later, additional objections were filed, numbered from 1 to 5.   The first charged, in general terms, that the assessment and the proceeding to confirm the same were in violation of the Fourteenth Amendment to the Constitution of the United States; the second, that as the proceeding was not authorized by any valid ordinance at the time the work was done, to confirm the assessment under the assumption that it was sustained by the act of 1895 would be a violation of the Fourteenth Amendment to the Constitution of the United States; the third charged that as the ordinance under which the previous assessment was made had been held to be void, there was no authority for doing the work at the time when it was done, and hence to enforce the subsequent ordinance would also violate the Fourteenth Amendment; the fourth but reiterated that as the work was completed before the Illinois act of 1895 had been passed, to construe that law as authorizing the assessment would also violate the Constitution of the United States; and the fifth repeated in different form the same proposition by asserting that the law of 1895, if held to be retroactively applicable to the work which had been completed at the time of its passage, would be repugnant to the Fourteenth Amendment to the Constitution.

On the hearing by objections to evidence, by motions to strike out, and by additional pleadings, the grounds above stated were repeated, but were all overruled.   Following this, it is stated in the bill of exceptions—

" And thereupon all the said motions and legal objections having been disposed of, the said cause came on to be tried upon the objections triable by a jury; and thereupon it was stipulated in open court by the petitioners and by said objectors that the said cause should be submitted to the court for trial without a jury upon the said issues and upon the same evidence in all respects which has been offered upon the said motions and legal objections as hereinbefore set forth, without recalling witnesses or introducing or recalling or offering the said testimony, the same to be treated as having been offered upon the said issues, which was all the evidence offered on the said hearing. And thereupon the objectors contended that it was shown by the said evidence that the property of the said objectors and each of them, severally, was assessed more than its proportionate share of the cost of the said improvement; but said objections were overruled, and the court found the issues for the petitioners. . . ."

The decree which was entered expressly found that in each particular case the property assessed was benefited to the sum of the assessment. An appeal was taken from this decree to the Supreme Court of the State of Illinois, and on such appeal errors were assigned numbered from 1 to 20. They repeated in various forms of statement all the objections of a Federal nature which had been previously urged and asserted, besides a number of grounds of purely local concern. The Supreme Court of Illinois decided that although it was settled by a course of decisions in that State that there must exist authority for making a special assessment at the time the levy was made and before the work was done, yet the original ordinance under which the first assessment which had been declared illegal was made afforded such an authority. Construing its former opinions, the court said that whilst it had declared the previous assessment to be void because it provided for a payment in instalments contrary to the state statutes, nevertheless the ordinance to the extent that it directed an assessment, remained, albeit it had been held that the provision as to payment by instalments could not be enforced. The court then reviewed all the various objections to the form of the assessment, and held them to be without merit.

It moreover decided that, as the previous assessment had been set aside because of the instalment feature, the sums fixed therein were not conclusive, and on the new assessment it was competent to reëxamine the question of benefits and to restate the amounts due, even although in doing so it was ascertained that a larger sum was assessable upon some portions of the property than had been decreed by the order which confirmed the previous assessment. As to the property of Lombard, the court decided that the proof established that a change in condition had caused the property to be justly assessed for a larger proportion of benefit than had been attributed to it by consent in the first assessment. 181 Illinois, 136. To this decision the present writ of error is prosecuted.

*Mr. Nathan Grier Moore* for plaintiffs in error. *Mr. John P. Wilson* and *Mr. William B. McIlvaine* filed a brief for same.

*Mr. Robert A. Childs* for defendant in error. *Mr. Charles Hudson* was on his brief.

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

The assignments of error contained in the record are nine in number, and eleven in addition have been made since the record was filed in this court. The question whether the benefit accruing to each particular piece of property assessed equalled the sum of the assessment placed thereon was foreclosed by the findings of fact of the trial court, to which court the case was submitted without the intervention of a jury. It is suggested, although under the statutes of Illinois a special assessment can only be made for the amount of the benefit shown to exist, this is of no concern in this case since this levy is not a special assessment, but is a special tax. Where a special tax is imposed under the law of Illinois, it is asserted, no inquiry into the benefits can be had, and, therefore, there arises no question whether the levy was invalid, as exceeding the benefits to be derived,

since all investigation into the amount of the benefits was, as a matter of law, excluded. But this proposition is plainly an afterthought. From the statement of the case which precedes, it is apparent that the objectors to the assessment considered that their defence raised the issue of benefit, that they tendered proof, submitted the question to the trial court without a jury and had an award against them. It is plain, also, that this contention was not raised by the assignment of errors in the Supreme Court of Illinois, and such question was not by that court in any way considered. Putting out of view questions of form, the principal contentions made in the Supreme Court of Illinois, as shown by the assignment of errors in that court, were as follows: That as under the law of the State of Illinois, an authority existing at the time the work was done was necessary to justify an assessment, a violation of the Fourteenth Amendment would be brought about by holding that authority for the assessment was supplied by the Illinois act of 1895, since such law was enacted after the work was completed, and that as the previous ordinance had been declared void by the Supreme Court of Illinois, to hold such void ordinance to be an authority for the subsequent assessment would also violate the Fourteenth Amendment, since it would amount to a want of due process of law and a denial of the equal protection of the laws. And these propositions, stated in varying form, really express every substantial issue raised by the twenty assignments which are here pressed. We do not take up each assignment in detail to show that this is the case, since a statement of them all, as summed up in argument of counsel, is in the margin,[1] and renders a more detailed enumeration unnecessary.

---

[1] "1st. As the court will see, this is a hard case. The controversy arises out of an effort to compel a ribbon of land 125 feet wide, along the margin of a boulevard 250 feet in width, decorated and ornamented as a park, to pay the entire cost of its improvement, although it is made for the general benefit of the inhabitants.

"2d. The original ordinance for the improvement was declared by the Supreme Court, in a direct proceeding, to be *void*, and so utterly without effect as to form no basis for an adjudication thereon by the county court.

"3d. The constitution and laws of the State, as uniformly construed, permit no such charge to be created against private property without a previ-

The power of the State of Illinois to levy a special assessment in proportion to benefits, for the execution of a local work, and the authority to confer on a municipality the attribute of providing for such an assessment, is not denied.

It is no longer open to question that where a special assessment to pay for a particular work has been held to be illegal, no violation of the Constitution of the United States arises from a subsequent authority given to make a new special assessment to pay for the completed work. *Spencer* v. *Merchant,* 125 U. S. 345.

With these two propositions in mind it is certain that if the power flowing from the ordinance which the Supreme Court of the State of Illinois upheld existed, prior to the work, the assessment was valid. So, also, if the authority was only given subsequent to the work, it was, from the point of view of the Constitution of the United States, legally conferred. In either contingency, therefore, there was no cause of complaint so far as Federal rights were concerned. The contention advanced,

---

ous valid ordinance providing that the cost be paid by special assessment or special tax.

"4th. The previous assessment having been extinguished completely by the decision of the Supreme Court, there remained no authority of law to charge this property. The legislature thereupon passed a law, after the work had been completed, providing that, notwithstanding the said provisions of the constitution of the State, the work previously completed *might* be charged upon the private property by a procedure therein for the first time provided.

"5th. On the application for such an assessment the property owners protested, setting up the provisions of the Constitution of the United States in denial of the right.

"6th. The courts of the State, although they had held the original ordinance *void,* so as to confer no jurisdiction on the courts even to consider it, held that it was *valid* for the purpose of creating a charge on property of plaintiffs in error.

"7th. If the ordinance was in fact valid, then the original judgment of confirmation, reducing this assessment, was valid and effectual, and should have been applied here.

"8th. By the whipsawing process we have referred to, the courts of the State have held that the ordinance of March 28, 1893, was *void,* so as to deprive plaintiffs in error of the benefits of its adjudication reducing the amount of their assessment; but *valid* for the purpose of creating a charge upon their property."

therefore, amounts to this, that a violation of the Constitution of the United States has been produced by the exercise of a power which, whatever view may be taken, could be brought into play without giving rise to a conflict with such Constitution. But in effect, it is asserted, this deduction is inapposite to this case, since the proposition here relied upon is that the Supreme Court of the State of Illinois maintained the assessment on a void ordinance, and, therefore, in effect decided that a valid assessment could be made where there was no authority whatever for the levy. This, however, rests upon an entirely false assumption, since it is manifest that the court below held that there was a valid ordinance, that is, one which sufficiently conferred the authority to make the assessment. Whether the ordinance was or was not valid, and the extent to which it was so, having regard to the state constitution and laws, was wholly a state and not a Federal question, and we are not concerned with it. Accepting the conclusion of the Supreme Court of the State of Illinois as to the existence of the ordinance by virtue of the state law and constitution, the proposition pressed upon us comes to the result which we have above indicated, and, therefore, is obviously without merit. Indeed, the misconception involved in the argument was pointed out in *Castillo* v. *McConnico*, 168 U. S. 674. There it was asserted that a particular assessment was void because of a mistake in the name of the person whose property had been assessed. The Supreme Court of Louisiana, interpreting the statutes of that State, otherwise decided. It was urged, however, that such decision was in conflict with many prior rulings of that court, and therefore a Federal question was presented. But it was held that as it was within the power of the State of Louisiana, without violating the Constitution of the United States, to direct the assessment without giving the name of the owner, by an adequate description of the property assessed, the decision of the Supreme Court of the State of Louisiana raised no Federal question. The court said (p. 683):

" The vice which underlies the entire argument of the plaintiff in error arises from a failure to distinguish between the essentials of due process of law under the Fourteenth Amend-

ment and matters which may or may not be essential under the terms of the state assessing or taxing law. The two are neither correlative or coterminous.

"The first, due process of law, must be found in the state statute, and cannot be departed from without violating the Constitution of the United States. The other depends on the lawmaking power of the State, and as it is solely the result of such authority may vary or change as the legislative will of the State sees fit to ordain. It follows that, to determine the existence of the one, due process of law is the final province of this court, whilst the ascertainment of the other, that is, what is merely essential under the state statute, is a state question, within the final jurisdiction of the courts of last resort of the several States."

And the principle thus inculcated not only disposes of the argument which we have previously considered, but also makes it clear that the Supreme Court of Illinois .decided a local and not a Federal question when it held that it was competent on a new assessment to determine the questions of benefit from the proof, even though in so doing a different result was reached from that which had been arrived at when the former assessment which had been set aside was made. The theory lying at the foundation of all the arguments advanced to show that the court below committed error of a Federal nature is this, and nothing more, that the equal protection of the laws was denied by the Supreme Court of Illinois, because that court, although it treated the assessing ordinance as invalid for the purposes of the first assessment, upheld that ordinance as valid for the second assessment. This but asserts that because it is considered that there was inconsistency in the reasoning by which the Supreme Court of Illinois sustained its conclusion, therefore the equal protection of the laws was denied. If the proposition as thus understood was held to be sound, as it cannot be, every case decided in the courts of last resort of the several States would be subject to the revisory power of this court, wherever the losing party deemed that the reasoning by which the state court had been led to decide adversely to his rights was inconsistent with the reasoning previously announced by the same

court in former cases.  In thus stating the ultimate deduction to which the proposition necessarily leads, we do not wish to be understood as implying that we think the reasoning upon which the Supreme Court of the State of Illinois placed its decision in this case is amenable to the inconsistency which it is insisted it embodies.  As that consideration is wholly beyond the pale of our jurisdiction, we have not even approached its consideration.

*Judgment affirmed.*