## ST. LOUIS-SAN FRANCISCO RY. CO. v. SEBASTIAN BRIDGE DIST.

(Circuit Court of Appeals, Eighth Circuit.    September 14, 1923.)

### No. 6065.

**1. Bridges ⬡12—Assessment of benefits held made on erroneous basis.**

Assessors authorized by statute to assess benefits from the construction of a bridge on real estate in a district on the basis of actual benefits did not follow the prescribed rule by assuming that all property in the district was benefited to the same extent, and assessing all at the same percentage of its value, as determined by them.

**2. Bridges ⬡12—Owner cannot complain of erroneous mode of assessment of benefits unless injured thereby.**

An owner, whose property has been assessed for benefits from the construction of a bridge, cannot attack the validity of the assessment in court, because made on an erroneous basis, unless his own assessment was thereby increased beyond what it would have been, had the correct procedure been followed.

**3. Constitutional law ⬡42—Constitutional questions can only be raised by persons injuriously affected.**

Courts should refuse to decide constitutional points, unless the party raising them is injured by the threatened action, which is claimed to be invalid.

**4. Bridges ⬡12—Legislature may rectify invalid assessment of benefits by requiring reassessment.**

As property subject to assessment of benefits from the construction of a bridge should not escape assessment because the assessment made did not conform to the statute, the Legislature may rectify the error by requiring its reassessment.

⬡ For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Bridges ⬅️12—Property of railroad company held doubly assessed for benefits.**

Assessors appointed under a statute to assess benefits on property from the construction of a bridge *held* to have made a double assessment of property of a railroad company by making a separate assessment of property, which under the state statutes (Crawford & Moses' Dig. Ark. §§ 4003, 9974, 9982, 9984, 9986, 9987, 9989, 9990) was a part of its right of way for purpose of assessment by the state tax commission, and also assessing its right of way on the basis of its value as found by the state tax commission.

**6. Bridges ⬅️12—Railroad trackage in streets held subject to assessment for benefits.**

Under a special act of Arkansas, creating a bridge district and authorizing assessment of benefits from construction of a bridge on property in the district, including railroads, roadbeds, and appurtenances, trackage of a railroad company, though located in public streets or alleys, *held* subject to assessment following the general statutes of the state (Crawford & Moses' Dig. Ark. § 5657), which make such trackage subject to assessment for other local improvements.

**7. Bridges ⬅️12—Instruction to jury in determining benefits to property approved.**

In determining benefits to property of a railroad company from the building of a bridge, an instruction that the use made of the buildings on the land should be considered, and if their value for such use would not be enhanced the jury should exclude them from the assessment, was properly refused, and the jury *held* properly instructed to consider the property as an entity.

**8. Bridges ⬅️12—Damages not subject of set-off in assessment of benefits.**

Under a special act creating a bridge district, with power to condemn land for a bridge, and providing that damages therefor "shall be assessed irrespective of any benefit such owner may receive" from the improvement, and also for assessment of benefits on the land in the district, any damages which result from a "taking," and are therefore recoverable in condemnation proceedings or suits for damages, cannot be considered in computing benefits.

Trieber, District Judge, dissenting.

In Error to the District Court of the United States for the Western District of Arkansas.

Proceeding by the Sebastian Bridge District against the St. Louis-San Francisco Railway Company to assess benefits. From the judgment, the Railway Company brings error. Modified and affirmed.

H. P. Warner, of Ft. Smith, Ark. (W. F. Evans and E. T. Miller, both of St. Louis, Mo., on the brief), for plaintiff in error.

James B. McDonough, of Ft. Smith, Ark., for defendant in error.

Before STONE, Circuit Judge, and TRIEBER and JOHNSON, District Judges.

STONE, Circuit Judge. By a special act of the Arkansas Legislature (Acts 1913, No. 104), the Sebastian bridge district was organized for the purpose of building a bridge across the Arkansas river from a designated point in Ft. Smith, Ark. The act defined the boundaries of the district, authorized payment for the improvement by benefit assessments, limited assessments to 10 per centum of the assessed valuation of the real estate benefited; prescribed actual benefits as the basis of apportionment; and provided that railways should be assessed the

same as other property, "except that said assessment shall be made per mile." Under the act, this assessment was made by a board of assessors. From the determination of that board an appeal was allowed to a board of commissioners and from the commissioners to the county court. The assessors determined a horizontal benefit of 10 per centum on the actual value (as found by them) to all real estate within the district. This railway, having been assessed, appealed to the commissioners and from them to the county court, at which latter point it removed the matter to the federal court, and the cause was there tried before a jury. From a judgment on the verdict thereof, the railway sues this error.

[1] It presents here six points. The first is that the assessment was made "arbitrarily and without relation to the special benefits to be derived by the property of the plaintiff in error from the construction of the bridge." The statute required the assessment to be made upon the basis of actual benefits. The evidence is overwhelming that the method pursued by the assessors was as follows: They regarded the bridge as a benefit to the entire district and all of the real estate in it in an amount equal to the cost of the bridge; that, without any consideration of benefits to particular tracts and ignoring any differences or considerations of position, location, relation to the improvement or usage, they determined the actual value of all real estate tracts and then declared a benefit of 10 per cent. thereon—the actual assessment being slightly over 41 per cent. of this benefit. In short, they estimated the "community benefit" to equal the cost and then spread this benefit horizontally on all the real estate in the district on the basis of the value of such property. Undisputed testimony was to the effect that proximity to the bridge would affect the benefit therefrom. There was not the slightest attempt to separately consider and determine benefits to particular tracts or to tracts in particular localities. It is clear, therefore, that the method of assessment required by the act was not followed but that the assessors, with good intentions but none the less erroneously, adopted and carried out a different method of their own. They had no authority to do otherwise than as the Legislature had directed them. All of their powers came from the act creating the district and they must stay within such granted powers. Martin v. District of Columbia, 205 U. S. 135, 140, 27 Sup. Ct. 440, 51 L. Ed. 743.

[2] But does this conclusion necessitate a reversal of the case? Such a decision could affect only the rights of this plaintiff in error. Others, who have been assessed and are not contesting the assessment, can waive the illegality thereof and this contestant is not concerned therewith and has no right to demand a reassessment of such other lands. St. L. Land Co. v. Kansas City, 241 U. S. 419, 428, 36 Sup. Ct. 647, 60 L. Ed. 1072.

[3] Courts should refuse to decide constitutional points unless the party raising them is injured by the threatened action which is claimed to be invalid. Here the railway is not discriminated against because it was actually assessed upon the same basis and the same rate as all other real estate and the jury found, as matter of fact, that no discrim-

ination against this plaintiff in error existed. See Milheim v. Moffat Tunnel Improvement District, 43 Sup. Ct. 694, 67 L. Ed. 1194, decided by the Supreme Court on June 11, 1923, on the last point ("appraisal of benefits") discussed therein. Also, it is not injured by the fact that it, with all others, was assessed upon an erroneous basis since the jury has found that the actual benefit (which was the proper assessment basis) equals the benefit found under the erroneous method. Again, if we ordered simply that the assessment of this railway be according to the actual benefits, as required by the act, the result would clearly be the same as has been reached here, since two of the three assessors have expressed, in this record, their conviction that the benefits equalled this assessment.

[4] It is, also, clear that this plaintiff in error, could not and should not entirely escape assessment for this improvement. Even if the method of assessment were so erroneous, because not the one required by the act, as to vitiate any possible assessment of this railway under the existing law, yet the Legislature could rectify this by requiring reassessment of this property. Lombard v. West Chicago Park Com'rs, 181 U. S. 33, 21 Sup. Ct. 507, 45 L. Ed. 731; also see Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763; Mattingly v. Dist. of Columbia, 97 U. S. 687, 24 L. Ed. 1098; Norwood v. Baker, 172 U. S. 269, 293, 19 Sup. Ct. 187, 43 L. Ed. 443; Columbia Heights R. Co. v. Rudolph, 217 U. S. 547, 30 Sup. Ct. 581, 54 L. Ed. 877, 19 Ann. Cas. 854; Willoughby v. Chicago, 235 U. S. 45, 35 Sup. Ct. 23, 59 L. Ed. 123; St. L. & K. C. Land Co. v. Kansas City, 241 U. S. 419, 431, 36 Sup. Ct. 647, 60 L. Ed. 1072. In view of the foregoing, we should, as to this point, decline to consider the constitutional question because no injury is shown and an order would be of no practical benefit to this objector.

The second point argued by this plaintiff in error (Brief, p. 31) is covered by what is said above, no matter whether we declare the invalidity of the assessment or do not do so.

[5] The third point is that a portion of this property has been subjected to double assessment. The portion intended is a part of a tract in section 9, consisting of 14.68 acres. In making up their assessment list, these assessors included and separately treated and valued ten items: Main line, side track, buildings on right of way and seven separately described pieces of real estate. The above acreage in section 9 was one of these items and the assessment thereon was $2,800. The claim made is that 10.60 acres of the 14.68 acres was also included in the right of way items. In determining the value of the railway property, the assessors took the valuation found by the state tax commission. The state statutes (Crawford & Moses' Digest, §§ 9974, 9982, 9984, 9986, 9987, 9989 and 9990) require that all property used for railway purposes be assessed, for general taxation, by the commission and that property not so used be assessed locally. Therefore, when these assessors took the valuations of the commission, they had the value of all property within the district used for railway purposes. If any part of the above acreage was included therein, then the second inclusion in this acreage item would be duplicated valuation to that

extent. Right of way as well as all manner of railway building and yards are included within the above statutes and, therefore, within the valuation of the commission. Also, section 4003 of the same statutes, a portion of the Act on Eminent Domain, declares that:

"The words 'right of way,' as used in this act, shall be construed to mean and include all grounds necessary for sidetracks, turnouts, depots, workshops, water stations and other necessary buildings."

The description of properties in the above sections relating to the commission and the argumentative force of the statutory definition of right of way in the eminent domain statute convince that all land used in connection with railway purposes is included in the valuation made by the Commission. St. L., I. M. & S. R. Co. v. Miller County, 67 Ark. 498, 55 S. W. 926. The evidence shows that of this tract of 14.68 acres, 10.60 acres were used as terminal yards containing roundhouse, machine shop, turntable, material storage yards and terminal trackage. This portion was plainly covered by the commission's valuation and should have been excluded from this acreage. This deduction would leave that item as 4.08 acres with assessment of $778.27.

[6] The fourth contention is that certain trackage, not subject to assessment, was assessed. A portion of this trackage is claimed to be without the district and another portion to be located in public streets and alleys. It is tacitly admitted that there is an over mileage of .04 miles of main track and .06 miles of side track. This surplus should, of course, be omitted and the items covering them correspondingly reduced.

It is shown that .69 miles of main track and 3.16 miles side track, all assessed, lie in public streets or alleys. Under the general statutes of Arkansas governing municipal improvement districts (Crawford & Moses' Dig. c. 89, art. II, § 5657) such trackage is made subject to benefit assessment for local improvements. This improvement is under a special act which provides:

"That all railroads, tramroads, right of way, roadbeds and appurtenances in said district shall be assessed according to the betterments and increase in value in like manner as is herein prescribed for real estate, except that said assessment shall be made per mile." Acts 1913, No. 104, § 9.

In Ft. Smith L. & T. Co. v. McDonough, 119 Ark. 254, 177 S. W. 926, a street railway company was contesting the assessment, by a bridge district, of its trackage in public streets for building a bridge. The district was acting under a special act, as here, containing the precise provision last above quoted. The court there held that street railways were to be distinguished from steam railways; were not taxable for local improvements on their trackage in public streets without statutory definition and that they were not within the meaning of the above quotation from the special act. In determining the latter point it said (119 Ark. at page 260, 177 S. W. at page 928):

"Nor do we think that the special statute now under consideration has any such application, for its purpose was, we think, to follow the lines of the general statutes for the purposes of taxation and make only the tracks of steam railroads subject to special tax. There is nothing in the language to justify the belief that the Legislature intended anything else."

This language is a clear expression of the court as to the construction to be placed upon the clause here involved. There is no question of the power of the Legislature to impose this liability if it so desires. Ft. Smith L. & T. Co. v. McDonough, 119 Ark. 254, 258, 177 S. W. 926; Durham Public Service Co. v. Durham, 261 U. S. 149, 43 Sup. Ct. 290, 67 L. Ed. 580, decided by United States Supreme Court February 19, 1923. Under this act and the above quotation from the McDonough Case this seems to have been done here. This contention is, therefore, unsound.

[7] The fifth contention is that the court erred in refusing to charge that as to railroad buildings which had no value except for railroad purposes the jury should consider only that exclusive usage and unless they are found to have been enhanced in value by the improvement, they should be excluded from the assessment. The sole reason for assessing these buildings is that they are part of the real estate. It would seem that a more logical way to assess the real estate (land and structures) would have been to treat it as a unit instead of dividing it into items of land and of structures. However, it is merely a matter of method, whichever plan is adopted. The challenge here is not that the act does not contemplate assessment of land improvements as a part of the land but that no benefit to these improvements is or can be shown because of the limited character of their usage. If they are assessable as a portion of the land, as something which is a part of and has added value to the land, then their usage enters into the equation only as determining the character of usage of the land for the time being, which usage may, of course, have a direct bearing upon the effect of the bridge improvement upon the value of such land. This is illustrated, in the instances of railways, by the cases of Branson v. Bush, 251 U. S. 182, 40 Sup. Ct. 113, 64 L. Ed. 215; Kasnas City Southern R. Co. v. Road Imp. District, 256 U. S. 658, 41 Sup. Ct. 604, 65 L. Ed. 1151, and Thomas v. K. C. S. R. Co., 261 U. S. 481, 43 Sup. Ct. 440, 67 L. Ed. 758, decided April 9, 1923. The charge of the court directed the jury to consider the matter of benefits as applicable to the railroad property as an entirety. This was the basis required by the act, such basis is permissible and, therefore, the charge was correct and the instruction asked, seeking to segregate different items of railway property, was rightly refused. This view makes inapplicable the cases cited by plaintiff in error, which were cases dealing with lack of benefit to property as an entirety.

[8] The final contention is that the verdict of the jury is inconsistent with and not supported by the evidence in regard to consideration, in determining benefit, of damage to this property by construction of the bridge. This contention rests necessarily on the basis that there was damage shown by the evidence or found by the jury. This premise is not present. The evidence conflicted sharply upon this point and there is no ground for saying that the jury found such damage to exist. If such damage did exist, it was of that character of damage which is within the meaning of a "taking," as such term is used in constitutional provisions, condemnation proceedings or suits for such damages. As such, it cannot be considered in computing benefits. This is so for

the reasons set forth in Sebastian Bridge District v. Missouri Pac. R. Co. (C. C. A.) 292 Fed. 345.

The judgment should be modified by elimination of the double assessments above set forth in discussion of the third and fourth contentions and, as thus modified, it is affirmed.

TRIEBER, District Judge (dissenting). I regret my inability to concur in the result reached by the majority. In making the assessment, the assessors did not follow the requirements of the act creating the district, but, as stated in the majority opinion "adopted and carried out a different method of their own." This they had no right to do, and their failure to comply with the provisions of the act vitiated the entire assessment. This is the well-established rule in the state of Arkansas. In Desha Road Improvement District No. 2 v. Stroud, 153 Ark. 587, 593, 241 S. W. 882, 884, the latest case on that subject, the court said:

"The statute giving the owners of property a specified time after the completion of the assessments of benefits to commence an action challenging the correctness of the assessment is primarily for the benefit of the individual property owners in the correction of their own assessments; but, where the whole assessment is on the wrong basis, each property owner has his remedy to have it canceled, if the complaint is filed within apt time. In other words, the remedy of the property owner is not confined necessarily to the correction of his own assessment, if the assessments as a whole have been made on the wrong basis, for, in a direct attack upon the validity of assessments, one made on the wrong basis is tantamount to no assessment at all. Kirst v. Street Imp. Dist., 86 Ark. 1; Lee Wilson Co. v. Road Imp. Dist., 127 Ark. 310."

See, also, Martin v. District of Columbia, 205 U. S. 135, 140, 27 Sup. Ct. 440, 51 L. Ed. 743.

For this reason I am of the opinion that the court should have sustained the railway's motion for a directed verdict and the cause should be reversed, but without prejudice to make a new assessment of its property in conformity with the provisions of the act creating the district.